PARSONS OIL COMPANY, APPELLANT, V. WILLIAM SCHLITT, JR., APPELLEE.

FILED JULY 12, 1933.  No. 28758.

*Charles E. Bruckman* and *L. S. Dunmire,* for appellant.

*L. A. Sprague* and *Bernard McNeny, contra.*

Heard before GOSS, C. J., GOOD, DAY and PAINE, JJ., and CHASE, LOVEL S. HASTINGS and TEWELL, District Judges.

CHASE, District Judge.

This is a proceeding brought by an employee to recover compensation under the workmen's compensation statute. The facts may be narrated as follows: The appellee, who is the employee, sustained an injury while in the employment of the appellant, who will be hereinafter termed the employer, on December 5, 1930, while working as a filling station attendant in the city of Hastings, Nebraska. The basis of the injury claimed was that he suffered a sprain of his right ankle by turning the same inward on a cement curbing near the filling station which was elevated about two inches above the general platform. On March 4, 1931, the employee filed a petition before the compensation commissioner of the state of Nebraska against the employer and his surety company, claiming that he had suffered compensable injury arising out of and in the course of his employment. On May 6, 1931, hearing was had before the compensation commissioner and the final award was made on the 26th of June, 1931,

in which it was found that the employee had received an injury to his right ankle causing sprain to the same in the course of and arising out of his employment, and as a result thereof the employee was entitled to receive from the employer the sum of $12 each week for a period of 21 weeks, starting the 12th day of December, 1930, and ending on the 7th day of May, 1931, except the week of April 14, for which week the employee was entitled only to the sum of $6.50, making a total of $186.50, adding an additional $60 which had been previously paid, making the total amount of compensation recoverable by the employee the sum of $246.50, which was paid and received by the employee. No appeal was taken by either party from that award.

On September 8, 1931, the employee commenced another action before the compensation commissioner for an additional award, alleging that the sprain and injury to his ankle which he received on December 5, 1930, had continuously grown worse, and due to no subsequent outside aggravation his disability was greatly increased; that on January 28, 1932, a hearing thereon was had before the compensation commissioner, and the employee was allowed additional award of $7.20 a week for 300 weeks as temporary partial disability. From that award the employer appealed to the district court, and on October 12, 1932, the appeal was heard in the district court, and on January 27, 1933, the district court found that on December 5, 1930, the employee sustained an injury in the course of and arising out of his employment with his employer to his right foot and ankle; that the employee was entitled to recover from his employer the sum of $7.20 a week for 150 weeks, commencing the 5th day of September, 1931, and entered judgment. From this judgment the employer presents the record to this court for review.

The employer bases his claim for reversal upon two propositions: First, that the employee has not sustained the burden of proof necessary in cases of this character; second, that the original award, made before the com-

pensation commissioner, unappealed from and accepted, is final and not subject to readjustment.

As to the first proposition, it becomes necessary to review quite carefully the evidence upon which the trial court made its finding. The employee testified in substance that he had never received any additional injury to his ankle since the one he received at the filling station and that after he had received his first award his ankle continued to grow worse. The shoe that he had been wearing upon the injured foot was offered in evidence to support his contention and from an examination thereof it appears that the posterior portion of the heel of the shoe was mostly worn away. He offers Doctor Uridel as the only other witness to prove his case. Doctor Uridel testified that he never knew the employee and met him first on the day before the trial of this case in the district court, which was October 11, 1932; that the employee came to his office, and that he took an X-ray picture of his foot and ankle, which was taken about 21 months after the alleged injury, and that in his opinion the X-ray plate disclosed a fracture of the second metatarsal bone of the right foot which produced a loosening of the small bones and the resulting flattening of the arch. He also testified that such a condition was not necessarily the result of a direct trauma, but it could occur from violent muscular contraction independent of direct trauma. The witness testified also that he knew nothing about the cause of the injury except what he learned from the employee himself.

The employer produced Doctors Hahn and Calbraith. Doctor Hahn, a very eminent X-ray specialist, whose profession is now altogether confined to X-ray work, testified that he treated the employee shortly after the accident for injury to the foot and examined him then to find if there were any fractures, took X-ray pictures of both anterior, posterior and lateral views and found no fractures of any of the bones of the foot or ankle. Doctor Hahn also testified, after examining the X-ray plate

offered in evidence by the employee, taken by Doctor Uridel the day before the trial, that the plate disclosed no fractures, that in reading the plate at the point where Doctor Uridel testified there appeared a fracture, Doctor Hahn testified that the mark claimed by Doctor Uridel as a fracture was merely the joint itself and a mere overlapping of the head of the metatarsal bone.

Doctor Calbraith testified that he first met the employee when he came to his office for treatment on February 18, 1931, which was approximately 18 months before Doctor Uridel ever saw the employee. Doctor Calbraith testified that at the time he treated him he found a sprained ankle and injury to the external ligament of the ankle, the ankle was somewhat enlarged, but the enlargement was due to nature's ordinary repairing processes. Doctor Calbraith also interpreted the X-ray plates taken by Doctor Uridel and stated it was a very poor picture, but he could not discover any evidences from the plate of a fracture to the metatarsal bone.

The employer also offered testimony by himself and other employees of the filling station that in a conversation had with the employee he stated to these witnesses that he had suffered an additional sprain to his ankle after the first injury by slipping upon the sidewalk.

It also appears from the record that the employee, after having been dismissed by the employer, worked for a number of other persons over various periods of time drawing full compensation therefor.

At the trial in the lower court, the employee seems to base his claim upon the fact that there was a fracture of the metatarsal bone at the time the first compensation was paid which was then undisclosed. This court on a number of occasions in cases of this character has held that the burden of proving compensable injuries by a preponderance of the evidence is cast upon the employee, and unless he properly sustains this burden he cannot recover. *Omaha & C. B. Street R. Co. v. Johnson,* 109 Neb. 526; *Bartlett v. Eaton,* 123 Neb. 599.

It will be observed that two prominent physicians testified in opposition to Doctor Uridel and interpreted the X-ray plates taken by Doctor Uridel. Both testified that even that plate does not disclose any fracture of the metatarsal bone, and Doctor Hahn, an X-ray expert, shows that the crack, or fissure, that Doctor Uridel claims is a fracture is nothing more than the overlapping of the bones at the metatarsal joint. Unless the employee has sustained the burden of proof of establishing the fact that the nature and extent of his injury were not ascertained before the original award; that the true nature and extent of his injury were not ascertained before the original award; that the true nature and condition of his injury could not reasonably have been discovered, then he must fail in his appeal. The only evidence in support of his claim for additional compensation is that he is now suffering from a fracture of the metatarsal bone and this fracture at the time of his original award was not discovered or contemplated. In this action he must recover, if at all, upon the theory that he has sustained the burden of proof of that particular and important fact. From the evidence we cannot conclude that the employee claims that the sprain upon which his original award was based has constantly grown worse. He seems to have departed from that theory, and bases his claim upon an injury entirely different in character. The effect of the testimony is that his condition has grown worse, not because the sprain to his ankle grew worse, but because there is and has been since his injury a fracture of the metatarsal bone that was not discovered at the time of the hearing upon his original application under which an award was made and fully paid.

The employee has not established by a preponderance of the evidence that he is now suffering from an injury which was latent and undiscovered at the time of the first hearing. On the contrary, the evidence in fact quite satisfactorily discloses that the employee is not suffering from a fracture of the metatarsal bone, but that at no time during the period of his injury has he ever sustained

such. Such being the state of the record, a decision of any other proposition raised becomes wholly unnecessary.

Because of the facts disclosed in the record, we conclude that the employee has not established by a preponderance of the evidence that he is suffering from the injury claimed by him. In view of the foregoing, the judgment is reversed and the proceeding dismissed.

REVERSED AND DISMISSED.