GEORGE BARTLETT, APPELLEE, V. ARTHUR EATON, APPELLANT: ARTHUR A. KNEELAND ET AL., APPELLEES.

FILED JULY 19, 1932. No. 28344.

*Hall, Cline & Williams,* for appellant.

*Mockett & Finkelstein,* for appellee Bartlett.

*Field, Ricketts & Ricketts,* for appellees Kneeland and Continental Casualty Company.

Heard before GOSS, C. J., ROSE, DEAN and EBERLY, JJ., and BEGLEY and BLACKLEDGE, District Judges.

BEGLEY, District Judge.

This is an action under the workmen's compensation act wherein George Bartlett, an employee, asked to invoke the provisions of the act because of injuries received by him while in the employ of Arthur Eaton. Arthur A. Kneeland, a general contractor, had the contract to remodel a store building at Fifteenth and O streets, Lincoln, Nebraska. Arthur Eaton, a plasterer, was employed to do the plastering. George Bartlett was one of the men employed by Eaton as a plasterer. On November 8, 1929, Eaton and men had brought a lot of scaffolding, preparatory to getting ready to plaster. Kneeland had promised some of the old shelving to a man and requested Eaton to have some one help him move the shelving. Eaton called Bartlett to assist in moving the shelving, which was placed on Eaton's truck. In making the delivery the shelving caught on another car and Bartlett, who was riding on the rear of Eaton's truck, was injured by shelving scraping his left leg between the ankle and knee. At Kneeland's direction, Bartlett was taken to Dr. Harry E. Flansburg, the physician employed by the Continental Casualty Company, Kneeland's compensation insurance carrier, and was treated by him for his injury for nine weeks, when he was discharged by the doctor. Compensation for nine weeks at $15 a week was paid Bartlett by Kneeland's carrier. Thereafter Bartlett worked until May, 1930, for the Chase Plow Company, and thereafter, until October or November, on an irrigated farm near Morrill.

In January, 1931, Bartlett came back to Dr. Flansburg, complaining of swelling at his left knee, which Dr. Thomson treated as a bursitis or inflammation of the bursæ or sacs at the knee joint. Bartlett filed his petition before the compensation commissioner, joining as defendants Arthur Eaton, Arthur A. Kneeland and the Continental Casualty Company. The defendants filed an answer, in

which they admit that the plaintiff had been injured by reason of the accident of November, 1929, and alleged that he was paid compensation from November 15, 1929, to January 7, 1930, at which time he had fully recovered and had received compensation benefits in full; that the injury and disability, if any, of which plaintiff now complains, was not a result of the accident sustained in November, 1929. The petition was dismissed by the compensation commissioner and same was appealed to the district court, where a finding was had in favor of the plaintiff and against the defendant Arthur Eaton, and in favor of the defendants Arthur A. Kneeland and Continental Casualty Company. A finding was made that the condition of the plaintiff's leg was a result of the accident of November 8, 1929; that the extent of the injuries were latent and unknown to the plaintiff until October, 1930; that the degree of disability suffered by plaintiff is 50 per cent. and that he was entitled to compensation at $15 a week for 17 weeks, commencing November 1, 1930, and ending February 28, 1931, and to receive from October 1, 1930, $8.66 a week until disability ends or until further order of the court, not however, beyond 300 weeks from the date of the accident. From this decree the defendant Arthur Eaton appealed.

The main contention of the appellant is that the evidence is insufficient to show that the condition of the knee in 1931 was caused by the accident of November 8, 1929. The burden of proof is on the appellee to show with reasonable certainty that the alleged injury was caused by the accident. *Omaha & C. B. Street R. Co. v. Johnson*, 109 Neb. 526.

Dr. J. E. M. Thomson, who performed the operation on Bartlett's leg on January 22, 1931, testified: "I found two large bursæ, one on either side of the large muscle here of the leg and its attachment to the knee cap. To the large muscle here on either side there were two large bursæ or sacs, the origin of which I was unable to determine. They normally extend and increase under certain circumstances.

One of them is hemorrhage and injury into the region or into the bursæ, and the other is due to infection. In either event the circumstances are much the same. If hemorrhage extensive enough to cause organization, that is changes that occur of a character that cause a new growth of tissue or a degeneration of such tissue and blood there is an increase in the synovia or lining of these bursæ and an increase in the secretion—the synovia is the secreting membrane and in the increase in the synovia and thickening of the membrane there is some fluid thrown out. Now in this instance there was a very thickened heavy membrane. These two bursæ connected with each other and there was considerable evidence of debris in there in particularly the larger bursæ and they had to be resected out. The entire mass was resected out with one incision, both bursæ at the same time."

In regard to the length of time it may have existed, the doctor said: "If he were quiet and did not move around very much and was not doing heavy work it might be possible that the bursæ would be there for a long time, say six months. I think it is very hard to tell when this thing occurred. I think it is very hard to connect anything of that kind. Such an injury might cause a condition of the leg I found in January, 1931. Really it is a guess on my part as to whether or not the accident of November 8, 1929, had anything to do with the condition I operated on. I assume there was an injury to the knee in November, 1929."

Dr. Harry A. Flansburg testified that Bartlett came to him in November, 1929, with an injury to his left leg; "He had an injury to his left leg which consisted of an abrasion or really scraping of the skin along the inside of the shin bone starting in the upper third of the leg and extending down practically to the ankle. He had considerable swelling along the ankle and some discoloration."

When he was treating Bartlett there was no evidence of any kind of a knee injury. He took an X-ray of the ankle and not of the knee because he did not complain of any knee injury.

He further testified: "He had absolutely no sign of injury to the knee. The accident in November, 1929, could not have caused a hemorrhage where the swelling occurred in 1931 without producing signs, such as immediate swelling, discoloration and limitation of motion. There could be no hemorrhage in November, 1929, without outward signs. If he had a hemorrhage at all he would have had signs of it at the time of the first injury. A blow on the side of the knee might cause such a swelling as I noticed in January, 1931, but it is pretty hard to realize that it would without definite signs following the injury. I would say in all probability it did not. There might be a slight possibility, I doubt it. There would have to be immediate signs of swelling and redness."

He further testified: "Q. What caused the thing he did have? A. The bursitis? Q. Yes. A. It might be an infectious thing; it might come on without ever an injury; and an examination of those hyperpapillæ reveals they are sometimes from infection or injury in type. It does not specify a traumatic thing at all."

This was the only expert testimony as to the cause of the bursitis and at most it establishes a mere possibility that the bursitis was caused by the accident of November 8, 1929.

As stated by Dr. Thomson, who testified in support of the Bartlett claim, it was really a guess on his part as to whether or not the accident of November 8, 1929, had anything to do with the condition he operated on. The evidence established that it could have been caused by either a hemorrhage or by an infection. No witness seemed able to tell from which cause. Bartlett was treated for nine weeks in 1929 by Dr. Flansburg and discharged as cured. Dr. Flansburg says there was no injury to the knee, and that in his opinion the bursitis could not have resulted from the accident two years later.

After Bartlett was discharged he went to work at very hard and confining labor, working for three months in the Chase Plow Company at bench work, and from March to May thereafter he did general farm work; drove teams,

did plowing, cultivating sugar beets, and did irrigating, and had very little pain in his leg until July. He did not go to a doctor until January when he was found to have **bursitis.**

In *Ginsberg v. Burroughs Adding Machine Co.*, 204 Mich. 130, the Michigan court said: "But the inferences drawn must be from established facts; inference may not be built upon inference, possibilities upon possibilities, or inferences drawn contrary to the established facts, contrary to the undisputed evidence. If an inference favorable to the applicant can only be arrived at by conjecture or speculation the applicant may not recover. So if there are two or more inferences equally consistent with the facts, arising out of the established facts, the applicant must fail."

In the case of *Standard Oil Co. v. Industrial Commission*, 339 Ill. 252, the Illinois court held: "Liability under the compensation act cannot rest upon the imagination, speculation or conjecture or upon a choice between two views equally compatible with the evidence, but must be based upon facts established by a preponderance of the evidence. * * * Awards for compensation cannot be based upon possibilities or probabilities but must be based upon sufficient evidence showing that the claimant has incurred a disability arising out of and in the course of his employment."

The testimony in this case is just as consistent with the theory that Bartlett's injury to his knee was caused by an infection during his work after the accident of November 8, 1929, as it is with the theory that his knee was injured at that time and the same resulted from a hemorrhage. The plaintiff has therefore failed to sustain the burden of proof that the injury was caused by an accident sustained in the course of his employment. Other errors are alleged, but in view of the above finding it is not necessary to consider them.

The judgment is therefore reversed and the action dismissed.

REVERSED AND DISMISSED.