WAYNE COUNTY ET AL., APPELLANTS, V. AMELIA LESSMAN,
APPELLEE.

285 N. W. 579

FILED MAY 12, 1939.   No. 30644.

*Burr R. Davis* and *Votava, McGroarty & Sklenicka,* for
appellants.

*C. H. Hendrickson, contra.*

Heard before SIMMONS, C. J., EBERLY, PAINE, CARTER,
MESSMORE and JOHNSEN, JJ., and KROGER, District Judge.

PAINE, J.

This is an appeal in a compensation case from an award
entered by the full compensation court and affirmed on an
examination of that evidence by the district court.   The
defense is that deceased died of cancer, and that this disease

was not caused or aggravated by any accident sustained by the deceased in his employment.

The record discloses that George H. Lessman, the deceased employee, filed a petition with the Nebraska workmen's compensation court on November 2, 1937, alleging that, while operating a road grader for the defendant, Wayne county, on September 22, 1936, he received personal injuries, consisting of broken ribs, chest crushed, and internal injuries; that the delay in filing his petition for compensation for about one year, one month and eleven days from the date of the alleged injury was caused by the chairman of the board of county commissioners, who advised delay to ascertain the extent of the injuries; that the injury was at first thought temporary, and now seems permanent; that his employer had knowledge of the injury from the date it occurred; that his attending physician was Dr. L. W. Jamison, of Wayne, Nebraska.

An additional petition was filed by the widow of said George H. Lessman, alleging that her late husband, who filed the petition on November 2, 1937, died December 24, 1937, and she asked for an award.

In the answer filed February 17, 1938, Wayne county denied that an accident arose out of the employment; denied that any disability which Lessman suffered was caused by any injury arising out of or in the course of his employment; denied that any notice was ever given or claim filed as provided by law, and alleged that the claim was barred by the statute of limitations.

On April 4, 1938, a hearing was had on the claim before Judge Welch, a member of the compensation court, at Wayne. After hearing and argument, Judge Welch entered an order of dismissal on April 13, 1938, finding that the death of George H. Lessman was the result of a cancer of the pancreas, which was not caused, directly or indirectly, by the accident which deceased sustained prior to his death.

On April 26, 1938, petition for a rehearing before the entire compensation court was filed by the widow, and such

rehearing was held, beginning on July 8, 1938, before the three members of the court. An award was not entered until September 12, 1938, which award set aside the dismissal entered by Judge Welch, and entered an award for $150 funeral benefits, and directed payment of $15 a week for 325 weeks from December 24, 1937, and allowed medical bills of $109.

The defendants' many assignments of error include the following: That the findings of fact made by the district court are not conclusively supported by the evidence, and entitled the defendants to a trial *de novo* upon the record; findings of fact sustaining the award of the compensation court are based upon speculation and conjecture in finding that the plaintiff's disease and resulting death were due to an accident arising out of and in the course of his employment. Defendants insist that the claimant's cause of action was outlawed by the statute of limitation.

The evidence in regard to the occurrence of the accident may be briefly summarized as follows: Walter Henkel is the sole witness to the alleged accident; he testified that he was a dump boss on W. P. A. project No. 1800, which was the construction of a farm-to-market road, which ran in an easterly direction four miles south of Wayne, Nebraska, and was about six miles in length. Henkel testified that he worked part time as a dump boss and at other times drove a caterpillar tractor which pulled the grader. The deceased claimant, George H. Lessman, was a timekeeper on this job, and ran the grader part of the time, and Leon Hanson, the boss, ran it when Lessman was busy keeping time.

Henkel testified that about September, 1936, when he was driving a caterpillar tractor, the blade of the grader struck a hidden post and Lessman fell off the grader, but climbed right back on, and continued his work; that it did not kill the engine, but "kind of slowed it down;" that Lessman did not complain of any hurt at all; that it happened in the morning, and that Lessman finished out the day's work, and said nothing whatever about being hurt; that he con-

tinued to work from day to day, and never complained about the injury.

On cross-examination he said he had no idea as to the date when it happened, and no idea whatever where it happened; that it could have happened anywhere in the five and a half miles of the road graded.

This was the sworn testimony of Henkel before the compensation court. Witness Henkel admitted that he had signed the statement, dated May 6, 1937, containing the following: "George H. Lessman at no time while he was working with me was injured to my knowledge. I have no knowledge whatever of the tractor or grader striking any obstacle or telephone line anchor and I know of no such occurrence while I was on the job. George H. Lessman while working on the job with me at times complained about a pain in his back but he did not at any time say this was caused from an injury he received while working for Wayne county. George H. Lessman never at any time told me that he received an injury while working for Wayne county. * * * While we were working late in the winter Lessman had a severe cold in the chest and complained about the cold but said nothing about being injured in the chest or ribs and he never at any time told me that he received an injury to his chest or ribs."

This statement of May 6, 1937, was signed by Walter Henkel in the presence of W. J. Doran. He recalled signing this statement at the garage, and said that it was not given under any pressure, but that the evidence of an entirely different state of facts which he had just given on the witness-stand (in July, 1938) was the truth, and made no explanation whatever of the two contrary stories he had given.

Plaintiff's exhibit No. 2 was a statement signed by Frank Erxleben, the chairman of the county board, dated March 30, 1937, which he said was the first date that Lessman had complained to him of an accident, and that he immediately told Lessman to fill out the long report blank and bring it to him and he would sign it and send it in to

the insurance company. This printed form, with blank spaces filled in, was prepared by Lessman, and sets out that, at 10:00 a. m. on September 22, 1936, while running a road grader five miles south and nine miles east of Wayne, he had hit an unused telephone line anchor with the blade, which threw him off the grader; that the steering wheel hit him in the chest, and another lever in the hip and thigh. He gave as the witness of the accident Walter Henkel. It is stated in this report that his chest was hurt and three ribs fractured and his hip dislocated; that the injury has caused a loss of nine weeks' time, beginning on January 15, 1937. The report stated that he was first treated by Dr. Jamison about ten days after the accident on October 1, 1936. When this report was sent to the insurance company, an agent came out to investigate, and took the written statements of many persons, including the one hereinbefore referred to of Walter Henkel, dated May 6, 1937, and also one of the claimant himself.

The claimant's statement, exhibit No. 3, which was read into the record by Leon Hanson, the foreman, read in part as follows: "My name is George H. Lessman and I am 52 years old. I have worked on and off for Wayne county since 1923. * * * On September 21, 1936, about 10:30 a. m., I was operating the grader. Harold Westlund was working, who was working on the W. P. A. was running the tractor. Henkel at this time was acting as dump boss. * * * I was operating the grader and the grader blade struck a telephone line anchor. This threw the grader about as the blade was cutting a hill. The tilting crank struck me * * * in the chest in the middle right above the stomach. I did not pay any attention to the matter at the time, although my hip and chest hurt me. I continued working and did not report the injury to any county official or foreman as I did not think the matter amounted to anything. * * * During the last part of February or first part of March, 1936 (1937), I went up to see Dr. L. W. Jamison. * * * At this time I had a cold, but I told Dr. Jamison that I had been hit by the steering crank on the grader, in my

chest, and I wanted a thorough examination. * * * He did not take any X-ray, but said I had two or three fractured ribs and a fractured breast bone and a dislocated hip. He made this diagnosis without taking an X-ray. He taped my chest and treated my hip by twisting and manipulating it. It was my right hip."

The claimant's widow, Amelia Lessman, testified before the compensation commission generally that when he came home he had a skinned and cut place over the right knee; that he stooped over and bandaged it himself; that he also complained of his hip; that after he went to bed he complained of his chest; that there was a bruised mark on the chest in the vicinity of his right nipple; that he went to work the next morning, and continued to work every day the project lasted until in November.

Plaintiff called as a witness in the case Dr. L. W. Jamison, who testified that he was an osteopath surgeon; that he saw Lessman during the fall, because Lessman would occasionally bring in some of the children to see him. They had scarlet fever that fall, and the youngest boy had sore throat, and Lessman brought him to the office once or twice, but that the first time that Lessman had complained to him about having suffered an accident was in March, 1937, when he had a pain in his chest, and Dr. Jamison thought he had pleurisy, and that he also strapped up his hip or lower pelvis at that time.

Plaintiff also called as a witness Dr. A. Texley, who had practiced in Wayne since 1900, and was a graduate of the Kansas City University Medical School. Lessman came in to see him in the fall of 1937, and gave him a history of an injury, and complained of pain in his abdomen. He testified that this was shortly after Thanksgiving day in 1937, which was five or six weeks after the first time he came in; that Lessman was jaundiced, and he gave him an ordinary prescription for that twice, and made a charge of $7, and then when Lessman came back from the University Hospital he gave him sedatives to relieve the pain.

On rebuttal Dr. Jamison testified that when Lessman

became jaundiced he started to talk with him about going down to the University Hospital at Omaha, and they finally accepted him as a patient, but did not open him up.

The defendant called Dr. Walter Benthack, a physician and surgeon, who operates a hospital at Wayne, Nebraska. He was the attending physician of the claimant from November 28, 1937, until his death, December 24, 1937. He performed the autopsy, and found a gall-bladder, which usually held an ounce or two, distended until it held a pint. He found no injury to the liver or abdominal wall, but by inserting his finger in the head of the pancreas he found a hard mass about an inch and a half in diameter, which was a cancer. He removed and sent to Dr. H. E. Eggers, professor of pathology at the University of Nebraska Medical College at Omaha, the gallbladder, the end of the stomach, and the pancreas. He diagnosed the cause of death as a cancer at the head of the pancreas. Dr. Benthack testified that the pancreas is about five inches long, lies directly in front of the first and second lumbar vertebræ, that it is covered in front by the stomach and the outlet of the stomach, the duodenum, and that the liver is also in front of the head of the pancreas. He was asked whether he believed that a bruise would cause a cancer, and he testified: "In the first place, there is grave doubt whether a cancer—whether trauma has any influence on the development of cancer. However, that is for an expert to pass on." He added: "Because of the location of the cancer, it is extremely difficult for trauma to reach the pancreas." He testified that it was possible to drive the abdominal wall back so far that it might reach the pancreas, but it would be a very severe blow, and that such a blow would be much more liable to injure other organs, such as the liver or stomach. He said that such a severe blow would give the person receiving it a shock, for the solar plexus is just behind the head of the pancreas, and would knock the wind out of a man, the blood pressure would be affected, and it would cause a collapse; that a man who received a blow sufficient to injure the pancreas would not be able to get right up off

the ground and get on a grader and continue with his work.

The defendant also called as its expert witness Dr. H. E. Eggers, 56 years of age. He graduated from medical college and received his master's degree at the University of Wisconsin, spent 19 months in the army during the war, was in Harvard Medical School one year, on a leave of absence, and for four years was professor of pathology in Hearst Medical School, Chicago, and has been for years the head of the department of pathology at the University of Nebraska Medical School in Omaha. He testified that since 1920 he has given all of his research time to work on cancer and its cause; that the first instalment of his treatise on that subject was published in 1929, and the last one in 1932, and that this text he has written gives a general review of the subject of cancer; that carcinoma is the general term for cancer; that sarcoma is a highly malignant growth which starts as a carcinoma, and another form of carcinoma is a brain tumor; that he examined the specimens sent down by Dr. Benthack from the autopsy on George H. Lessman, and had them out in his automobile; that the pancreas is formed of epithelial cells, and that carcinoma is simply a peculiar form of overgrowth of epithelial cells, when such cells no longer obey the laws of their regular growth, and that this form of overgrowth of such cells infiltrates and destroys any tissue with which it comes in contact. He testified that an injury to the pancreas is very rare, although he had seen a number of them, but all of them were caused by puncturing wounds. He states as his opinion that he is not entirely convinced whether a blow or trauma will cause cancer.

Dr. Eggers said about the cause of cancer: "In my opinion, cancer is a common type of reaction to a number of causes. We actually know quite a number of causes of cancer. I could enumerate fifteen or twenty offhand." But he testified that nobody knows what causes this particular kind of cancer that he found in Lessman's pancreas. He testified that in some cancers acute trauma appeared to play a causative part occasionally. He referred to inves-

tigations of cancer of the breast by Ziegler, and that Ziegler reported that trauma had played a causative role in 35 out of 328 cases of carcinoma of the breast. He testified that in all of his experience as a doctor he had never seen a case of cancer develop from traumatism. Dr. Eggers testified that his fee for testifying in this case would be $100. He testified that the solar plexus lies immediately between the pancreas and the spinal column, and that if a person received a blow of sufficient severity to injure the pancreas the result of the shock due to the pancreas injury would be like having the breath knocked out, accompanied by severe, intense pain, and rigidity of the muscles, and nausea and vomiting.

Defendant's exhibit No. 1 was a photostatic copy of a page from a standard medical atlas, showing a horizontal cross-section of a man as if it were sawed through a frozen cadaver near the upper surface of the first lumbar vertebra. It shows the spleen on the left side of the abdomen, the liver on the right side, and reaching across two-thirds of the front of the abdomen, the stomach occupying the other third of the front. In front of the left kidney and the spinal column lies the narrow, elongated pancreas, with the spleen between it and the left wall of the abdomen, and the stomach and the lobe of the liver in front of it.

In Vol. 6 of Industrial Medicine, pages 86-89, published in February, 1937, Dr. Herbert H. Davis reaches the following conclusions:

"A single injury to previously healthy tissue has never been definitely proved to cause cancer.

"The occasional production of cancer in this manner cannot be absolutely disproved. * * *

"No one has succeeded in experimentally producing a series of malignant tumors by trauma.

"Trauma reveals more malignant tumors than it causes."

An article in the American Journal of Surgery for February, 1936, by Dr. James Ewing, a recognized authority on cancer, gives these postulates:

"The statutes of most European countries and the best

American practice require that the following conditions be proved before trauma can be accepted as the cause of tumor:

"1. The authenticity and sufficient severity of the trauma. * * *

"2. Previous integrity of the wounded part. * * *

"3. The identity of the injured area with that giving origin to the tumor; a blow in one part of the body cannot be made the cause of a tumor arising in another part. * * *

"4. The tumor must be of a type that could conceivably result from trauma. * * *

"5. There must be a proper time interval between the receipt of the injury and the appearance of the tumor."

Now, to illustrate these postulates, if the tip of a person's tongue had recently been examined by a pathologist, and was known to be free of disease, and it was injured by a severe prick of a pin, and a sarcoma developed shortly thereafter in the identical spot, that would be evidence upon which to base the conclusion that the injury brought about the sarcoma. However, no such facts appear to convince us in the case at bar.

Let us examine a few decisions from other courts in cases involving cancers. An employee slipped from a ladder on July 31, 1931, and fell across a pile of lumber, fracturing his hip. Medical evidence was to the effect that his death on August 1, 1932, of cancer of the prostate gland and tumor of the third lumbar vertebra, did not result from his fall. Compensation was denied. *Smith v. White Pine Lumber Co.*, 53 Idaho, 808, 27 Pac. (2d) 965.

In *Ortner v. Zenith Carburetor Co.*, 207 Mich. 610, 175 N. 'W. 122, a workman crushed his finger, which caused blood poisoning. Settlement was made for the injury. Two years later he filed a petition for a rehearing, asking additional compensation because a cancer had developed in another part of his body. Held, evidence insufficient to show that the cancer was attributable to any injury received in the course of his employment.

In *Schapiro v. Wanamaker*, 197 App. Div. 810, 189 N. Y.

Supp. 343, a clerk fainted and fell, and a drawer fell on her chest. Seven months later an operation was performed for cancer of her breast. The physician testified that it could not be said positively that a blow would cause a cancer; that neither he nor any one else knew. Held, evidence insufficient to sustain a finding that the cancer was attributable to the injury.

In *Slack v. Percival Co.*, 198 Ia. 54, 199 N. W. 323, it was held that a fall by an employee of 12 or 15 feet into an elevator pit, resulting in a fracture of two bones, was insufficient to show that the fall accelerated the growth and development of cancer of the stomach. It was said that a claimant has the burden to establish by a preponderance of the evidence a right to compensation, that it is a legal right, and the matter cannot be left wholly to surmise or conjecture; that it must be established in a legal way, and not by guess or speculation.

We will now consider a few of our Nebraska cases. It has been held by this court that we do not recognize the doctrine that, because an injury may probably be the cause of an ailment, the court should so find, for our rule is that awards of compensation are not based upon possibilities or probabilities, but only upon sufficient evidence showing that the claimant has incurred a disability arising out of, and in the course of, his employment, and that this proof must be made by substantial evidence leading either to the direct conclusion or to a legitimate inference that such is the fact. *Saxton v. Sinclair Refining Co.*, 125 Neb. 468, 250 N. W. 655.

In *Beatrice Creamery Co. v. Kizer*, 127 Neb. 34, 254 N. W. 690, the employee struck the calf of his leg against a motor sitting on the floor. The result was a bruise on his left leg. He was unable to continue work, and returned home, and remained at home for two days, and then an examination at the Lincoln Clinic disclosed hemorraghic bleeding under the skin of the calf of the left leg. Three days later the same kind of bleeding was discovered under the skin of the calf of the right leg, which had not been in-

jured, and two weeks after the date of the bruise to his leg he was found in a condition of stupor and partial paralysis, and died very shortly thereafter. His claim for compensation was denied on the ground that his death was due solely to acute lymphatic leukemia, and was not due to or contributed to by the injury resulting from the accident. See, also, *Huston v. Gage County Electric Co.,* 134 Neb. 805, 279 N. W. 797.

In compensation cases the burden of proof is always upon the claimant to prove by a preponderance of the evidence that the injury was caused to the employee by an accident arising out of, and in the course of, his employment. This means that the claimant must show with reasonable certainty that the alleged injury occurred, and that it was caused by an accident. *Bartlett v. Eaton,* 123 Neb. 599, 243 N. W. 772. See, also, *Omaha & C. B. Street R. Co. v. Johnson,* 109 Neb. 526, 191 N. W. 691, in which case the employee was never able to work after an accident, and became insane three years thereafter. It was held that the evidence was insufficient to show by inference alone that the death was the result of those injuries.

In *Amos v. Village of Bradshaw,* 128 Neb. 514, 259 N. W. 374, Amos was injured May 10, 1932, by falling off an electric light pole. About a year later he complained of hemorrhoids, and a physician diagnosed the trouble as cancer, and later performed an operation. He died on February 6, 1934, as a result of cancer, and action was brought for compensation by his widow. It is claimed that in falling from the pole he fell on his buttocks, although there is no proof to that effect in the record. The cancer was up about four inches from the rectum, and it is contended that, if a cancerous condition had existed, the fall aroused the same to activity. Two doctors who performed the operation testified that this type of cancer could not be aroused or affected by a fall, and it was held that the facts had not been established to that degree of certainty which would allow a recovery.

To reach a conclusion of the matter in the case at bar

is most difficult, for the defendant insists that the evidence shows it is extremely doubtful whether the deceased ever had an accident which affected his pancreas while working for Wayne county. The witness Henkel, who testified at the trial to seeing him climb back on the grader, had signed a written statement six months after the alleged accident, denying three or four times that any such accident ever occurred. It is quite difficult to know how much weight, if any, should be attached to the evidence of a witness who has told two entirely different stories, and gives no excuse therefor, and makes no attempt to reconcile them. Then we must recall that the deceased himself, six months after the alleged accident, in a written statement which he signed, said that another party was driving the tractor by the name of Westlund.

The widow definitely testified that one night he came home with a cut near the knee, which he bandaged himself, and had a red spot near the right nipple, and said he hurt his hip. If we admit on this evidence that an accident did occur at or about the time alleged, it is impossible that the injury to the chest under the right nipple, to the hip, and to the knee, injured the pancreas in any way, for the evidence shows that if that organ had been seriously injured he would have suffered severe shock and vomiting, and could not have immediately climbed up on the grader and worked steadily through the balance of the day without any complaint. If, in spite of the evidence to the contrary, it be admitted, for the purpose of argument, that in some unknown manner the pancreas was slightly injured, it is highly speculative whether such injury produced, or in any way affected, the carcinoma from which he died. No cancer has ever been deliberately produced by trauma. Severe injuries to flesh and organs of the human body have been followed by cancer at the point of injury, but this is usually the violently malignant form of sarcoma. Medical authorities are sharply divided whether such injuries simply reveal and accelerate the growth of a cancer already there, or do actually cause the sarcoma itself. Not all tumors

in the body caused by trauma develop into cancers.

Awards for compensation cannot be based upon speculation, possibilities, or probabilities. It must be shown by satisfactory evidence, with reasonable certainty, that the death of employee was caused by the accident and injury sustained thereby, which proof must be by substantial evidence leading either to the direct conclusion, or to a legitimate inference that such is the fact. *Price v. Burlington Refrigerator Express Co.*, 131 Neb. 657, 269 N. W. 425; *De Bruler v. City of Bayard*, 124 Neb. 566, 247 N. W. 347.

It is the opinion of this court that the judgment entered by Judge Welch, who first tried the case, denying any award and dismissing the petition, was the proper determination of this case, and therefore the judgment of the district court is hereby

REVERSED.