FRED H. SCHIRMER, APPELLEE, V. CEDAR COUNTY FARMERS TELEPHONE COMPANY ET AL., APPELLANTS.

296 N. W. 875

FILED MARCH 14, 1941. No. 31083.

*Votava & McGroarty* and *Eugene F. Fitzgerald,* for appellants.

*Clarence E. Haley, contra.*

Heard before SIMMONS, C. J., ROSE, PAINE, CARTER, MESSMORE and YEAGER, JJ.

SIMMONS, C. J.

This appeal in a workman's compensation case presents

two questions: (1) Was the plaintiff's disability caused by the accident which he suffered? (2) Assuming an affirmative answer to that question, did the trial court err in allowing an attorney fee to the plaintiff?

Plaintiff was an employee of the defendant company as a lineman. While so engaged, he, using lineman's spurs, had climbed a pole to fasten some "floater" insulators in position on the outer end of a cross-arm. He had climbed the pole, had fastened the spur on his right leg in the pole, had his left arm across the cross-arm and between two pins, and was engaged in fastening the insulators, when his spur slipped a few inches, and again fastened in the pole. When the spur slipped, he tightened his hold with his left arm, catching the weight of his body and preventing a fall. He immediately felt a sharp pain in the chest. He finished his work in a few minutes, came down from the pole, and told his son that the air felt "very pure." He drove home a distance of a mile and on arrival there was suffering great pain in the entire chest area. He was taken to a hospital, where a definite diagnosis of coronary thrombosis was made. His left arm was slightly bruised in the accident. That this accident arose out of and in the course of his employment cannot be seriously questioned. That the plaintiff prior thereto was in apparent good health, and subsequently thereto has not been able to perform his usual tasks, is not disputed.

Defendant contends that plaintiff's physical condition was the result of disease, and was in no way caused or aggravated by the accident.

The case was tried before one judge of the compensation court, who entered an order dismissing the claim. On appeal, the matter was tried to the district court, who found that the plaintiff was entitled to compensation under the act. The matter comes to this court on appeal, subject to the statutory provision that the judgment of the district court may only be modified or set aside on the ground, " (3) That the findings of fact are not conclusively supported by the evidence as disclosed by the record, and if so found, the

cause shall be considered *de novo* upon the record." Comp. St. Supp. 1939, sec. 48-174.

"It is sufficient to show that the injury and preexisting disease combined to produce disability." *Chatt v. Massman Construction Co.*, 138 Neb. 288, 293 N. W. 105. An issue of fact is presented. In sustaining the burden of proof, "more than a preponderance of evidence is not required." *Chatt v. Massman Construction Co., supra.*

On this issue, plaintiff and defendant each offered the testimony of one expert witness. Plaintiff's witness was the physician who was called immediately following the accident, and who, with consultants, cared for plaintiff from that time forward. In response to the following questions, he gave the following answers:

"Q. Doctor, let me ask you this, Mr. Schirmer was working on a pole and slipped and caught himself with his left arm. Would that jar of itself be able to set up any complication or cause this coronary thrombosis? * * * A. I believe in this man's particular case, knowing his physical background, it would."

In answer to questions as to when "coronary thrombosis will attack a person," he answered that, "during unusual, severe exertion 5.6% or 6%" of the cases occur, and that "trauma shows only 8/10 of 1%."

"Q. You couldn't tell the court this theory of yours was correct or whether it was merely theory or conjecture? A. I would say in this man's case, irrespective of the condition of the arteries, it was the immediate strain of catching himself on the pole that produced this cataclysm so far as he was concerned. Q. You have nothing to go on so far as that is concerned except what had happened to him on the pole? A. And the fact that he gave a history of catching himself with his left arm. Q. And if it hadn't been for the history you would have to assume it was an ordinary case of thrombosis? A. One would have to suppose that. Q. As a matter of fact, you agree with the statistics quoted here, it could have happened to him when asleep or walking or resting or any other mild activity? A. Absolutely. On the

other hand this case falls under the 8/10 per cent. Q. The 8/10 of 1%? A. 8 mills. * * * Q. You don't contend any slipping here caused the diseased condition of the arteries do you? A. No. Q. Nor do you contend the slipping formed a blood clot? A. My contention was this—due to pneumothorax rupture—catching himself with his left arm and throwing his entire weight on the chest there was damage. We didn't know anything about it. We couldn't possibly familiarize ourselves with what precipitated this attack. Q. In other words you took a good guess? A. After all the only thing a physician has to go by—if you come into my office and say, 'Doctor Ogden hit me,' I believe he hit you; because if I didn't see it I have no way of proving it. Q. As a matter of fact you don't know how severe it was? A. I had the patient's statement and I know how I would like to catch myself that way."

The accident and severe illness occurred in January, 1939. Defendant's expert witness first examined plaintiff in October, 1939, covering a hospital period of five days. He found no coronary thrombosis at that time but did find an "extrasystoles heart," a not uncommon condition. He was asked a hypothetical question, concluding with a request for his opinion "as to whether or not his slipping on the pole in any way caused or aggravated this condition of coronary thrombosis?" He could not "see any connection between the slipping and the coronary occlusion which took place" and gave his reasons for that opinion. He further testified that he did not see how plaintiff's slipping on the pole and catching himself with his left arm could cause any particular closing of the arteries or strain in the coronary arteries and that coronary thrombosis was always caused by a diseased artery.

Upon such testimony the trial court found that "there was a direct connection between the accident and his disability which was unquestionably sustained by him while in the usual course of his employment."

"In the determination of the question of causation, the disability or death for which compensation is claimed may

just as legitimately be attributed to the accidental injury where undeveloped and latent physical conditions are set in motion and accelerated so as to produce such final result as where the same result follows directly from visible violence done to the physical structure of the body." 71 C. J. 605. "The acceleration, aggravation, or lighting up of a pre-existing disease by an injury may constitute disability of a character such as to come within the meaning of workmen's compensation acts." 71 C. J. 608. "Where an employee, while engaged in the work of his employment, aggravates or accelerates the condition of diseased blood vessels, thereby causing death or disability, it may constitute an injury of a character such as to come within the meaning of workmen's compensation acts." 71 C. J. 610. "The acceleration or aggravation of an employee's heart condition thereby causing death or other disability may constitute physical harm of such a character as to come within the meaning of workmen's compensation acts." 71 C. J. 611. For cases dealing generally with situations of this character, see annotations, 19 A. L. R. 110; 28 A. L. R. 209; 60 A. L. R. 1314.

We see no controlling reason for disturbing the finding of the trial court.

The trial court allowed an attorney fee to the plaintiff in addition to the compensation award. The defendant employer prevailed in the compensation court and plaintiff appealed to the district court. The statute provides that, "In the event the employer appeals to the district court * * * and fails to obtain any reduction in the amount of such award, the district court may allow the employee a reasonable attorney's fee to be taxed as costs." Comp. St. Supp. 1939, sec. 48-125. This provision does not authorize an award of an attorney's fee in this case. Plaintiff relies, however, upon the provision that, "Whenever the employer refuses payment or * * * neglects to pay compensation for thirty days after injury, and proceedings are held before the compensation court, a reasonable attorney's fee shall be allowed." Comp. St. Supp. 1939, sec. 48-125. This provi-

sion does not justify the award of an attorney's fee in the situation here presented.

The judgment of the district court is affirmed as to all matters except the allowance of an attorney's fee, and as to that it is reversed.

AFFIRMED IN PART AND REVERSED IN PART.

CARTER, J., dissenting.

Plaintiff claims that while working on a telephone pole with the climbing spur on his right foot imbedded in the pole and with his left arm over the cross-arm, he slipped, resulting in the injury of which he complains. On cross-examination he admitted that he did not know whether he slipped or not. He told his physician that he did not know what happened. There is no other evidence of accident. It is more likely that plaintiff's heart condition caused what he chooses to call an accident than that the alleged trauma caused his heart ailment. Such evidence cannot sustain a finding that plaintiff suffered an accident.

The evidence shows that plaintiff was suffering from a coronary thrombosis. It is a common disease. It is estimated that only eight-tenths of one *per centum* of all such cases result from trauma. The testimony of plaintiff's medical expert is interesting, a part of which is: "Q. Nor do you contend the slipping formed a blood clot? A. My contention was this—due to pneumothorax rupture—catching himself with his left arm and throwing his entire weight on the chest there was damage. We didn't know anything about it. We couldn't possibly familiarize ourselves with what precipitated this attack. Q. In other words you took a good guess? A. After all the only thing a physician has to go by—if you come into my office and say, 'Doctor Ogden hit me,' I believe he hit you; because if I didn't see it I have no way of proving it." As opposed to this evidence, defendant's expert medical witness says: "I cannot see any connection between the slipping and the coronary occlusion which took place for the reason that in order for a coronary thrombosis to occur there has to be a lot of preliminary groundwork laid. That is, there has to be coronary sclerosis

develop. One may involve any small portion of the artery and then after that has developed to a certain point there has to be a blood clot form on this, and this takes a considerable space of time for this blood clot to form. And when the time comes for that to shut off, it is going to shut off whatever the person is doing at that time." Plaintiff's evidence as to the cause of the coronary thrombosis is merely a guess. This, coupled with the rareness in which trauma plays a part, is very conclusive of the fact that the award is based upon speculative and conjectural evidence. This is insufficient to sustain an award. The burden of proof is upon plaintiff to show by a preponderance of the evidence that his disability was the result of accident arising out of and in the course of his employment. In my judgment, he has utterly failed to prove his case.