LOVINA PIXA, APPELLANT, V. GRAINGER BROTHERS COMPANY ET AL., APPELLEES.

12 N. W. (2d) 74

FILED NOVEMBER 26, 1943. No. 31702.

*Good & Simons,* for appellant.

*Morse & Buschenfield* and *Baylor, Tou Velle & Healey, contra.*

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL and WENKE, JJ.

PAINE, J.

This is a workmen's compensation case, in which the action was dismissed April 20, 1942, at a hearing before one judge of the compensation court, and on rehearing before the full compensation court a dismissal of the claim was entered July 13, 1942, which action was affirmed by the district court May 6, 1943, from which order the plaintiff has appealed to this court.

The widow, as plaintiff, brings this action for the death of her husband, who had been employed for a number of years by Grainger Brothers Company, and at the time of his death was driving a delivery truck for said firm.

There is not much dispute about the following facts: The deceased was treated by Dr. John C. Thompson for heart disease on May 31, 1940, at which time his condition was so serious that he was taken to the hospital, and from May 31 to June 7 he was treated there. He was unable to breathe at night, unless propped up. He had insufficient power in his heart to provide adequate circulation. The doctor continued to see him, and gave him digitalis glucosides, which he was to continue taking, and diagnosed the heart condition as acute myocarditis, which is an inflammation of the heart muscle, which may have followed a recent

attack of influenza. An X-ray examination also showed an infection from diseased teeth, several of which were removed later that summer. The doctor advised rest in bed, and also that he should not do any hard work. He went back to work about July 1, telling the doctor that in order to eat he had to work. Dr. Thompson testified that he never complained of pain, which was rather unusual, and that in such a condition either the heart muscle gradually fails and cannot be brought back, or he might have had an acute dilation of the heart, which would result in sudden death.

Henry Goe, his foreman, testified that from the time he went back to work until his death he appeared to have slowed down, and while delivering groceries for his employer he dropped dead on January 30, 1941. No post-mortem was performed, and no physician was called, and the required death certificate was made out by the county attorney, which recites that death occurred at 5:20 p. m., January 30, 1941, from a "Sudden heart attack causing death before a physician could be called; no marks of violence, no sign of foul play."

The plaintiff filed a petition with the compensation court on July, 23, 1941, against Grainger Brothers Company, a corporation, and Employers' Mutual Liability Insurance Company of Wisconsin, as defendants, alleging that the deceased came to his death as a direct result of injuries received in an accident.

The evidence relating to this accident may be summarized about as follows: On December 19 or 20, 1940, at about 10 o'clock in the morning, the deceased was carrying half a crate of head lettuce into the Y. M. C. A. cafeteria in Lincoln and slipped on ice in the alley east of the building, and fell with his shoulder against the building, and the crate of lettuce fell on him, injuring his back. However, he continued to work until about 3:45 in the afternoon.

Henry Goe, truck foreman of Grainger Brothers Company, testified that on the day of the accident deceased came back and reported that the lettuce had fallen on him and hit him in the chest or stomach, and that a report of the ac-

cident was made to the insurance carrier, setting out that deceased had slipped on the ice and fell, twisting his back, and that claim was made for compensation for sprained back.

Disability began on December 20, and compensation began on December 27 and stopped on January 2, for five-sevenths of a week, at $14 a week, and a claim of $10 compensation, $22.75 medical expense, making a total claim of $32.75, was paid. It is claimed by the plaintiff that deceased went back to work before he had entirely recovered from this injury.

Henry Goe testifies that he was short-handed; that two of his employees had gone to the Rose Bowl game in California, and he called deceased by telephone and asked if he could come back to work because he needed him, and that he acted stiff in the back for several days until he got loosened up, and in a week or two he got in stride again and did his usual work of truck driving and delivering groceries and food; that a short time before his death he saw him when he was loading up his last truckload, with cases of groceries which might weigh from 5 pounds to 60 pounds.

The plaintiff testified that the shortness of breath of her husband continued until the day of his death, and he had to be propped up with a pillow every night after the accident. Her contention is that his death was directly contributed to by the accident which he had on December 19, and in support thereof plaintiff produced the evidence of a duly qualified medical expert whose specialty was internal medicine and diagnosis, including diseases of the heart. He did not treat nor see the deceased, but the facts came to him from hypothetical questions which set forth the material parts of the testimony of the witnesses. He gave as his expert opinion that the cause of death in this case was an injury to the heart received at the time of the accident, for the fall on the ice caused a strain which could have injured his heart in one of three ways, by its touching the backbone, or the sternum, or the severe strain while he was falling; that the fact that he had to be propped up in bed, had

chest pains and shortness of breath immediately following the accident supported this contention. This expert witness gave it as his positive opinion that the accident aggravated his previously existing heart condition.

Deceased went to Dr. Thompson after this accident, who testified from his office notes, showing that deceased fell by the Y. M. C. A. building about 10:00 a. m., but continued to carry sacks of potatoes and other loads until about 3:45 p. m., when he was forced to stop by the pain in his back. Examination disclosed marked muscle spasm on the left side of the back, and tenderness over the third lumbar vertebra (in the small of the back). His spine was X-rayed and his back taped, and he was advised to go home and have absolute rest in bed for two or three days. He did not at that time treat him for any heart condition at all.

On December 21 he came to the office for a heat treatment of about 30 minutes over the lumbar region, and another such treatment was given on the 23d, while on the 24th the tape was removed and the patient was given a diathermy (penetrating type of electrical energy) treatment; which was repeated on the 26th, 27th and 30th days of December, at which time he was able to sleep without much distress, and the pain in his back had greatly subsided. On the 31st he came in for observation, at which time he showed no evidence of muscular spasm, the mobility was satisfactory, no tenderness on direct pressure on the back, and deceased wanted to return to work, and Dr. Thompson told him he thought it would be all right. He said the company was short of help, and had telephoned him, and "I told him if he could dodge heavy lifting for a few days that he would probably get along all right."

Dr. Thompson further testified that in taking these light treatments the deceased had to lie on his back for 20 to 30 minutes, and that he did not have any shortness of breath when he walked into the office or while taking the treatments.

Dr. Thompson testified that the accident of December 19 had nothing to do with his death on January 30. He testi-

fied that when he examined him after the accident he did not have any bruises on his chest, or make any complaint about his chest; that when deceased fell on his back he had the lettuce in his arms and it just fell with him. His answer to question 124 was: "Well, I can't say—of course, the whole matter is speculation, but I can't see, with the history we obtained and the findings, that there was any definite connection between his accident and his heart." He testified further: "Q. Well, would you say that it was possible that it had something to do with his passing away at this particular time? A. As I said before, all you can do is speculate about the cause of Frank's death. Perhaps there is a remote possibility that what you have to say should be considered. * * * Q. Would you say positively that he would have passed away on the 30th of January, doing work as he was doing, irrespective of whether he had the accident? A. That is exactly my idea. In other words, this thing was anticipated before this accident ever occurred; we were afraid such a thing might happen; and the story as we got it was that Frank was doing very hard work on that day."

For a reversal in this case, the plaintiff's attorney cites in the body of his brief several of our decisions in somewhat similar cases, upon which he relies. We will examine those cases. In *Skelly Oil Co. v. Gaugenbaugh,* 119 Neb. 698, 230 N. W. 688, an employee was lifting a stove and sustained an accidental injury, which appeared in the form of serious hemorrhage in his right groin and leg. He was in several hospitals, and suffered a long and dangerous illness immediately following this accident. In the text of the opinion it is said generally that, from a consideration of all the evidence, plaintiff suffered a strain, which was the immediate and proximate cause of his condition. The defense was that his condition was due to purpura, a serious disease of the blood and skin, and that the accidental strain caused this condition to light up and accelerate the results of the accident. It was held that "It is sufficient to show that the injury and preexisting disease combined to

produce disability, and not necessary to prove that the injury accelerated or aggravated the disease, in order to satisfy the requirement of the statute that the accident arose out of the employment."

The above syllabus was also used by this court in the case of *Palmer v. Sample,* 141 Neb. 36, 2 N. W. (2d) 583, in which an employee of a garage slipped on a cement stairway which had been scrubbed with caustic, and rolled down a flight of steps. He went home and was later daily treated at a doctor's office with heat lamp treatment for five weeks, and the injury lighted up a dormant case of osteoarthritis of the vertebral column, which resulted in continued disability. In this case compensation was awarded by the compensation court, and was also awarded by the district court, and the injury caused by the accident was proved to be the proximate cause of his disability.

Then appellant discusses at some length *Schirmer v. Cedar County Farmers Telephone Co.,* 139 Neb. 182, 296 N. W. 875, in which an accident produced a coronary thrombosis as a direct result, and compensation was allowed.

Appellant cites, but does not discuss, two other cases, one being *Chatt v. Massman Construction Co.,* 138 Neb. 288, 293 N. W. 105, in which an employee of a construction company was engaged in a revetment project along the Missouri river and slipped and fell into the river, injuring and bruising his right leg, and in wet, cold clothing he continued to work, exposed to chill, and as a direct result of the exposure, and pain from the accidental injury, he became disabled, and with a high temperature died ten days later. The defense was that he had been afflicted with arthritis, that his death was the result of acute rheumatic fever, and not the result of the accident. However, under the evidence this court affirmed the award.

Then in the case of *Gilcrest Lumber Co. v. Rengler,* 109 Neb. 246, 190 N. W. 578, an employee on July 3, 1920, accidentally suffered a slight bruise on the shin by a bundle of maple flooring falling against his leg, which was not sufficient of itself to cause disability, but three days later, ow-

ing to a diseased condition of his blood, the black and blue place broke open and formed an ulcer, which discharged and did not heal until November. Judge Redick discussed no Nebraska cases, but many from other states, and held that the plaintiff could recover, for the evidence showed that the accident was the proximate cause of the resulting disability.

From this analysis of the cases relied upon by the plaintiff for a reversal, we are unable to accept any of them as authority for a recovery in the case at bar, for each one of them can be very clearly distinguished from the facts in the case before us.

In our opinion, the reading of the evidence in the instant case leads to the conclusion that there was no connection between the accident the deceased had in slipping on the ice and twisting the small of his back on December 19 and his very unfortunate death occurring on January 30.

Any possible connection between the slight accident to his back, from which his attending physician says he had recovered, and his death would be a mere guess, surmise, conjecture, speculation, or possibility.

This is not sufficient, for under our law it is required that the plaintiff prove by a preponderance of the evidence, before compensation can be awarded, that personal injury to an employee must have been caused by an accident arising out of and in the course of his employment.

Such facts must be proved by the plaintiff by sufficient legal evidence leading to the direct conclusion, or a legal inference therefrom, that such an accidental injury occurred and caused the disability. See *Duncan v. Weidman, ante*, p. 864, 11 N. W. (2d) 537; *Rose v. City of Fairmont*, 140 Neb. 550, 300 N. W. 574; *Uribe v. Woods Bros. Construction Co.*, 124 Neb. 243, 246 N. W. 233; *Price v. Burlington Refrigerator Express Co.*, 131 Neb. 657, 269 N. W. 425; *Roccaforte v. State Furniture Co.*, 142 Neb. 768, 7 N. W. (2d) 656; *Gilkeson v. Northern Gas Engineering Co.*, 127 Neb. 124, 254 N. W. 714; *Mullen v. City of Hastings*, 125 Neb. 172, 249 N. W. 560; *Wayne County v. Lessman*, 136 Neb. 311, 285 N. W. 579.

In the opinion of this court, the same order entered by a judge of the compensation court, and by that court sitting *en banc,* and by the district court, dismissing the petition, was in each case correct, and the judgment of dismissal is hereby affirmed.

AFFIRMED.

SIMMONS, C. J., and CHAPPELL, J., concur in the result.