EVARISTO URIBE, APPELLEE, v. WOODS BROTHERS CONSTRUCTION COMPANY, APPELLANT.

FILED JANUARY 6, 1933. No. 28523.

*Woods, Woods & Aitken,* for appellant.

*George I. Craven* and *Harry A. Spencer, contra.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD, EBERLY, DAY and PAINE, JJ.

Paine, J.

This is an appeal by the Woods Brothers Construction Company from an allowance of over $3,300 for an accidental injury sustained by an employee working for them on the construction of the bridge over the Platte river at Ashland, on Federal Highway No. 6.

The plaintiff, Evaristo Uribe, was hired as a laborer and carpenter on July 29, 1931, and went to work at noon that day a few miles east of Ashland, where the defendant company was constructing a new bridge on Federal Highway No. 6, across the Platte river. Before he had completed a full second day's work, between 10 and 11 o'clock on the morning of July 31, he complained of feeling sick to the foreman, who told him to go and rest in the shade. He returned to work about 2:30 in the afternoon, and finished out that day, and rode back to Lincoln that evening in a friend's car. The next day he called Dr. Cameron, who gave him some digitalis. On August 3 the doctor called again, and told him to keep on taking the same medicine. After that Uribe made ten trips to the doctor's office, the last of these trips being on January 13, when he was trying to shovel some snow and his heart ran up again, and he went to the doctor's office for treatment for his heart action.

Plaintiff filed action against defendant, alleging that on the morning of July 31 he had suffered a sunstroke while at his work of a carpenter, and on October 1 a hearing on this petition was had before Cecil Matthews, deputy compensation commissioner, and an order was entered by him upon October 22, dismissing the claim for compensation, from which order plaintiff appealed to the district court for Lancaster county. After a trial in the district court, Uribe recoverd a judgment for two-thirds permanent disability, and defendant was directed to pay him $10.67 a week, beginning July 31, 1931, and continuing so long as the disability shall continue, but not to exceed 300 weeks, and to pay Dr. W. L. Cameron $17, and to pay Dr. George W. Covey $40, and defendant was required to furnish such further medical care and treatment as may be required.

The defendant claims that the appellee did not have a heat stroke upon July 31, nor at any other time, and that a heat stroke never results in permanent impairment of the heart; that, even if he had suffered a heat stroke, it was not an accidental injury, arising out of his employment, so as to entitle him to compensation; that whatever disability he had, and is now suffering from, is caused by a diseased heart condition, which has been brought about and caused by an infection, which infection is still present and is causing the continuation of the disability.

The plaintiff's attorney qualified an interpreter to use in examining Mr. Uribe, who was a Mexican, and the objection was made by the defendant that he had testified before the compensation commissioner without the use of an interpreter, and defendant objected to one being used in the district court, even though plaintiff's attorney had insisted that he had used a Spanish interpreter when talking with him to prepare the case.

The evidence discloses that the plaintiff was working under the same conditions as other workmen were working, and that he complained of trouble, but did not specify the kind of trouble, and the foreman told him to go and rest in the shade; that after dinner he was able to come back and complete the day's work, which of itself indicated a heart attack, rather than a sunstroke. When he called a doctor the next day, the doctor gave him digitalis for his heart, but did not, then or at any time, give him liquids, or treatment with cold packs, or any of the usual remedies applied for heat strokes. Dr. John Thompson testified that such heart symptoms developed rather gradually, and that the history of this case shows that it was due to a heart condition, rather than to anything else. He further testified that, pathological changes following a heat exhaustion, the nervous system is more sensitive to a heat stroke than the heart; that the liver, spleen and kidneys are equally as sensitive to a heat stroke as the heart; that they were not affected in this case, and that his blood pressure of 160 indicated a

heart condition of long standing, and it was his conclusion that the high blood pressure preceded the date of the alleged heat stroke. In addition, the films taken in electrocardiograph tests indicated coronary disease. Dr. Thompson further testified that the medical·text then in court gave no case where the heart effects of a sunstroke had lasted longer than two weeks, while in the plaintiff's case the heart disease still continues, and he says that, after a careful examination of plaintiff, he found he had a chronic myocarditis, due to infection, a rheumatic type of heart disease; that he had an increase in the size of the heart, a high blood pressure, pyorrhea, and a possible coronary occlusion.

It has been held that, if the employment brings about no greater exposure to injurious results from natural causes, such as lightning, severe heat or cold, than those to which persons generally in that locality are equally exposed, then there is no causal connection between the employment and the injury. *Larke v. Hancock Mutual Life Ins. Co.*, 90 Conn. 303; *Robson, Eckford & Co., Ltd., v. Blakey* (1912) Sess. Cas. 334, 5 B. W. C. C. 536.

, It was held in *Lewis v. Industrial Commission,* 178 Wis. 449, where an employee died from a heat stroke, that the claim was not compensable, as the exposure of the deceased to sunstroke at the time and place of injury was not different from that of ordinary outdoor workmen.

And in *Dougherty's Case,* 238 Mass. 456, 16 A. L. R. 1036, where a teamster delivering coal suffered a sunstroke, from which he died, recovery was denied, the court saying that the hazard of sunstroke would not seem to have been different from that to which persons in general were exposed.

In *Campbell v. Clausen-Flanagan Brewery,* 183 App. Div. (N. Y.) 499, the driver of a brewery wagon, engaged in delivering beer on an excessively hot day, about 3 o'clock in the afternoon, alighted from the wagon, walked around, and a few moments later dropped dead, but his assistant, who had worked with him on the wagon during the day, did no more than perspire, and it was held

that the driver was not, by reason of his employment, subjected to a special and increased hazard, not common to the public generally, and that the heat prostration did not arise out of his employment.

In the case of *Roach v. Kelsey Wheel Co.*, 200 Mich. 299, an employee was engaged in removing the old and placing new brick work around a boiler, where the temperature was about 136 degrees, the boiler being still warm, and compensation was denied on the ground that it did not appear that he exercised in any unusual manner, different from other employees engaged in the same work.

If any one will examine the record in this case, there will be considerable doubt in his mind as to whether Uribe suffered a heat stroke at all upon July 31, 1931, for Thomas A. Blair, of the United States weather bureau, clearly shows that the temperature at Ashland on July 31 was 97 degrees, whereas that on the day before was 103, and upon the afternoon he started work, July 29, it was 109, and the natural conclusion, from reading the medical evidence, would be that he was then, and is now, suffering from a heart condition, which was brought about by an infection, and which causes his disability, and that, on the other hand, the conditions under which he was working on the river bank at the Platte river bridge, which was being constructed, were no different from those under which all of the other employees were working at the time, and that he was exposed to no different chance of injury from heat than any other outdoor worker at the same time and place, and that whatever occurred to Mr. Uribe on the morning in question was not an accident arising out of his employment, and that he is not entitled to compensation therefor.

This court finds that the deputy compensation commissioner, Cecil Matthews, was right in dismissing Uribe's petition for compensation, and that the judgment of the district court should be reversed and the cause dismissed.

REVERSED AND DISMISSED.