ELLANORA BRADY, APPELLANT, v. BEATRICE CREAMERY COMPANY, APPELLEE.

FILED NOVEMBER 9, 1934. No. 29288.

*Reeder & Reeder* and *H. D. Hunter,* for appellant.

*Kennedy, Holland & De Lacy, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY and PAINE, JJ., and RAPER, District Judge.

PAINE, J.

This is a proceeding brought by the widow to recover compensation for the death of her husband. The claim was dismissed by the compensation commissioner, and upon appeal to the district court the claim was also denied, and the plaintiff's petition was dismissed.

The deceased was 59 years of age, about 5 feet, 5 inches tall, weighed about 200 pounds. He had been working for the defendant company for several years as superintendent, checking cream stations in northwest Nebraska and South Dakota, at a salary of $85 a month. He spent Sunday with his wife at their home near Columbus, Nebraska, and on Monday morning, June 19, 1933, started out on his regular trip. He ate a hearty breakfast, and left before 9 o'clock in a new 1933 Chevrolet coupé, owned by the company, which had been used only three months. He drove from Columbus to O'Neill, a distance of about 136 miles, stopping at Clearwater for lunch, and reaching O'Neill about 3 o'clock in the afternoon. He parked his car on the west side of the Golden Hotel, walked around to the front of the hotel, carrying his bag and brief-case, registered at the desk, stopped for a moment to speak to a friend in the barber shop in the rear, and then the bellboy took him to room No. 6 on the west side of the hotel. It was a hot day, and he said to the bellboy something to the effect that if such weather lasted long he did not see how he would make it. He asked the bellboy to open the win-

dow just a trifle at the bottom, as the air in the room was cooler than the hot air outside, and to turn on the cold-water faucet. He went to the dresser, unbuttoned his shirt-front, and dismissed the bellboy. Five or ten minutes later a maid working upstairs heard him call for help, and she called to the lobby, and Dr. Tipton, of Omaha, who was in O'Neill attending a golf tournament, ran right up to the room. The deceased was lying across the bed, flat on his back. His pulse was very feeble and rapid, and he just gave a couple of gasps and immediately died. Dr. Tipton testified that, as he had walked into the hotel, Mr. Brady, who was a stranger to him, appeared to be a short, fat man, whose face was flushed; he was walking with difficulty, and perspiring. He said that when he went to his room Mr. Brady had a pallor about his face, yet he was cyanotic, with purplish discoloration, especially about his nose and lips, all of which indicated a lack of aeration of the blood, and gave as his opinion that the death was due to failure of his heart; that there was more of a strain on the heart than it could stand, and it simply gave out.

Dr. Rich testified for the plaintiff, and said, in answer to a hypothetical question, that the cause of death in his opinion was due to heat exhaustion. Other medical evidence was given at the trial. No autopsy was held, so that no positive evidence could be given as to the cause of death.

The Nebraska supreme court has had two cases before it recently where compensation was asked on account of heat strokes or heat prostration. In the case of *Uribe v. Woods Bros. Construction Co.*, 124 Neb. 243, it was held that the evidence did not sustain a finding that the cause of the disability was a heat stroke arising out of employment, but disclosed that the unfortunate plaintiff's condition was due to heart disease. He was working with other men on the new bridge being constructed for automobile traffic east of Ashland, and was compelled to lie down at 11 o'clock in the morning, but returned to work

at 2:30, and upon his return to Lincoln in the evening he was treated with digitalis for his weak heart.

In *Herbert v. State,* 124 Neb. 312, a death occurred from heat prostration. Mr. Herbert was compelled to work checking cement in a slight depression. A pile of sand on the east side, about 25 feet high, cut off the breeze there, and on the west side there was a string of box cars, and on the north there was a built-up roadbed, all of which made it difficult for any breeze to strike him, as he weighed bulk cement in 250-pound lots for paving construction near Central City. He was taken ill at 11 o'clock in the morning, taken to a hotel room, and died about 6 o'clock in the evening. It was found that he was subjected to a greater hazard from the heat than that to which the public generally in that locality was subjected, and that the medical testimony supported a judgment finding heat prostration to be the cause of death, and that it arose out of his employment.

Other cases supporting our views are as follows: *Larke v. Hancock Mutual Life Ins. Co.,* 90 Conn. 303; *Young v. Western Furniture & Mfg. Co.,* 101 Neb. 696; *Bartlett v. Eaton,* 123 Neb. 599; *Mullen v. City of Hastings,* 125 Neb. 172; *Townsend v. Loeffelbein,* 123 Neb. 791; *Gilkeson v. Northern Gas Engineering Co.,* 127 Neb. 124.

In the case at bar, the deceased made a very leisurely trip, at less than 25 miles an hour, in a car that was well ventilated, with mats above the floor-board, which prevented any heat coming up from the motor, and while the temperature reached 100 degrees, yet all of the persons traveling this highway were subjected to just the same temperature, and Dr. Tipton went out and played golf immediately after the death of Mr. Brady, and no others in the same locality suffered from the heat, so far as the evidence indicates. The weight of the evidence shows that the deceased was suffering no ill effects until just before his death, and the weight of the evidence indicates that the death came from a sudden heart attack. Exposure to

the elements, including the heat of summer and the cold of winter, is not compensable if it is the same as the general public is exposed to, and this court is convinced that there is no error in this record, and the judgment of the district court is

AFFIRMED.