MᴄBʀᴀʏᴇʀ *v.* Dɪxɪᴇ Mᴇʀᴄᴇʀɪᴢɪɴɢ Co. *et al.*

(*Knoxville*, September Term, 1941.)

Opinion filed November 29, 1941.

See, Same case on demurrer reported at 176 Tenn., 560, 144 S. W. (2d), 764.

PHIL B. WHITAKER and HARRY HITE, both of Chattanooga, for plaintiff in error.

FINLAY & CAMPBELL and HOWARD·J. SEARS, all of Chattanooga, for defendants in error.

MR. JUSTICE DEHAVEN delivered the opinion of the Court.

This is a suit brought under the Workmen's Compensation Law of Tennessee, Code 1932, section 6851 et seq. Mrs. Nell Webb averred in her petition, filed January 6, 1940, that during the month of September, 1938, while she was regularly employed by defendant, and while pursuing her usual duties, a large spool of yarn was caused to fall from up above the place where she was standing and struck her on the right breast; that she did not know and could not have known the blow would result in serious injury, and it was not until April, 1939, that she was apprised of the fact that a cancer had de-

veloped; that immediately thereafter she notified defendant of her condition and what had caused it, and from that date until the date of the filing of this petition (January 6, 1940) "she has been continuously confined to her bed and physically unable to look after and manage her affairs, and her disability was such that she was physically incapacitated from instituting suit to recover compensation;" that from notification of the injury to the date of the filing of her petition, defendant furnished a nurse to look after and treat her.

Petitioner further averred that in November, 1939, her condition became such that it was necessary for her to undergo an operation for the removal of her right breast, which loss resulted directly from the blow she received in September, 1938; that from the date she received the blow up until the date the injury developed to where it could be detected, she continued in the employment of defendant and had no means of knowing that because of the blow the tissues in her breast had been torn loose and weakened and the blood cells and blood vessels therein had been damaged so that by gradual process which was not detectable, a malignant condition was developing. She further averred that by reason of the blow and the developments that resulted therefrom, she was rendered totally and permanently disabled and that such disability commenced in April, 1939, and continued up to the filing of the petition. She sought to recover compensation of 50% of her average weekly wage of $23, for a period not to exceed 400 weeks, and $5 per week not to exceed 150 weeks, plus medical and hospital expenses not to exceed $200.

The trial judge dismissed the suit upon demurrer. On appeal to this court the judgment sustaining the demurrer and dismissing the suit was reversed and the

cause remanded for further proceedings. 176 Tenn., 560, 144 S. W. (2d), 764. While the suit was pending on demurrer, Mrs. Webb died and the suit was revived in the name of Mrs. Cora McBrayer, mother of deceased, as administratrix of the estate of Mrs. Webb, deceased, and individually as a dependent of the deceased.

Upon remand of the case, defendant made answer and denied all of the material allegations of the petition.

Upon the hearing of the case, the trial judge found as follows:

"I do not think the petitioner is entitled to recover in the case for the following reasons:

"1. The proof does not establish as a fact that the deceased died as a result of a cancer caused by her alleged injury. That disease is too common to attribute it to a specific cause on mere speculation.

"2. I do not think that the deceased was either physically or mentally incapacitated to file or cause her claim for compensation to be filed within the statutory period so as to excuse her as a matter of law.

"Under the law and proof in the case the court is compelled to find against the petitioner and in favor of the defendant."

A motion for a new trial was overruled, and petitioner has appealed to this court and assigned errors.

It is first complained that the trial judge erred in holding that the proof does not establish as a fact that petitioner's intestate died as a result of cancer caused by her injury and that the disease is too common to attribute to a specific cause on mere speculation. It is objected by defendant that petitioner did not in her motion for a new trial set up as a ground therefor that the trial judge erred in this respect. She did, however, assign as grounds for a new trial, among others, that "there is no evidence to support the verdict" and "that the

verdict is contrary to the evidence.'' These, we think, afford ample basis for the first assignment of error here, which pointedly challenges the finding of the trial judge that the deceased did not die as the result of cancer caused by the injury.

It is the well-established rule that in a compensation case, the findings of fact by the trial judge will not be disturbed by this court if sustained by any material evidence.

The deposition of Mrs. Webb was taken on January 24, 1940, pending the demurrer, by leave of the court, so that her testimony might be perpetuated. She died on February 10, 1940. This deposition was read in evidence on the trial of the case. The substance of her testimony is that in September, 1938, while standing tieing a knot, one Delmar Woodard, an employee of defendant, dropped a cone of yarn which struck her on the upper part of her right breast, making a little purple spot, ''like a little bruised place'' on her breast, and a little lump in it by the time she got home, which she showed her husband when she got home; that she did not suffer any pain from her breast, and continued to work for defendant, until April 14, 1939, at which time a lump had developed in her right breast and she consulted Dr. Winters, her family physician, who passed away in June, 1939, and was advised that she had a cancer of the breast; that she did not know that she had a cancer until so advised. That she went to bed on April 14th and was there continuously confined to the day she gave her deposition. In November, 1939, Dr. Laws removed her right breast. In the meantime she had been attended by Dr. Haywood and Dr. Lydes. She further testified that on April 16, 1939, she advised Miss Cravens, the defendant's professional nurse, of the accident, who stated she would see

that she (Mrs. Webb) was taken care of. She further testified that she had never before received injury to her breast and that no one in her family had had cancer. That she had worked for defendant for eighteen years.

L. O. Webb, husband of petitioner, testified in substance, that in September, 1938, Mrs. Webb came home and exhibited to him "a slight red like place," about as big as his thumb nail, on her right breast; that there was no lump in the breast at that time; that the place on her breast cleared up in a few days, and she made no complaint about her breast until April 14, 1939; that she was confined to her bed from that time until her death, and was under constant medical treatment; that she was helped out of bed and carried to the doctor's several times in an automobile, and when carried back home would go to bed. That he first learned that his wife had cancer on the night of April 14, 1939; that he had not noticed any lump on her breast until April 14th; that the lump continued to grow until at the time of the operation it was larger than his head. He says that the lump was right on top of her right breast "at the exact place where she received that bruise."

Delmar Woodard, witness for defendant, denied that he dropped a cone of yarn on petitioner, and that she had never complained to him of an accident. He testified, however, that Mrs. Webb worked at a machine where yarn was wound on a cone and the cone was placed by her on top of the machine; that the cone so placed would sometimes topple off; that he would not say that a cone did not fall and strike Mrs. Webb, "that could have happened," though he had no knowledge of such an occurrence; that he had no reason to think Mrs. Webb would be untruthful about the matter, "I never knew her to tell anything but the truth." He further stated that

it was his duty to collect these cones from off the top of the machine where Mrs. Webb worked.

The trial judge did not find that the accident did not happen, but did find, in effect, that the facts proven did not show that the cancer was the result of the accident.

Dr. Laws, witness for petitioner, testified, in substance, that he waited on Mrs. Webb and diagnosed her malady as cancer, which involved her right breast and was very painful; that he removed her diseased breast in November, 1939, and told her people that she would not get well. He was asked:

"Q. Now, Doctor, medical science has never found the cause of cancer? A. No, sir.

"Q. In many instances they do know that cancer will result from certain conditions? A. No, they do not.

"Q. Do you know of any instances where cancer has resulted from a traumatic condition? A. Nobody knows that. Some authorities states it results from trauma.

"Q. In your experience state whether or not you have had cases where in your opinion cancer has resulted from traumatic condition? A. I just take authorities word for it. For me to be positive about that, I could not.

"Q. It is recognized by medical authorities that cancer may or will in some instances result from traumatic condition? A. Some do, yes, sir."

He further testified that he would not say that cancer is more likely to occur in the part of the body where there has been a trauma; that there are many cases where cancer has developed in the breast of a woman; that the breast is made of a glandular tissue and is very sensitive; that medical science recognizes that cancer results from a breaking down and change in the cells; that cancer can develop without the knowledge of the victim and in its

early stages without pain; that nobody knows any specific time for the development of cancer.

"Q. Is it possible for a woman to receive a blow to her breast and not have any appearance of a cancerous condition for eight or nine months, from the outside? A. I think that would be possible."

Asked a hypothetical question assuming the facts as testified to by Mrs. Webb, and what in his opinion caused the cancer, he replied:

"If she got a lick there, had discoloration, probably blood under the skin, and that cleared up, I would think that was the result of the lick. I would attribute it to that any way, but nobody can say positively."

On cross-examination, he stated that the cause of cancer or its cure is not definitely known, and it is conjecture to say that it is. He was shown an article by Dr. Francis Ward, Director of Cancer Research at Columbia University, entitled, "Cause of Cancer," were it was stated, in part, that, "The cause of cancer is not known, though there are two popular superstitions regarding it. One is, that cancer may be produced by a blow; and the other, that cancer is due to a germ. To uphold either of these there is not the slightest evidence," etc. The witness responded that he had not read the article, "I wouldn't swallow it all. That is one man's opinion." He agreed that thousands of times people have a blow, and no cancer develops; but there are many instances where where it does. For instance, he says that women who have had a child are prone to cancer of the uterus, and the cause is traumatic laceration of the cervix. That Mrs. Webb gave no history of having been treated by Dr. Cheney for a mass in her abdomen; that he could not make out any distinct mass, "I think she had some pelvic trouble there."

Dr. J. W. Horton, witness for defendant, testified that the cause of cancer is not known, "My opinion is that it is not. My opinion is based upon the reports I read of research work done by the authorities. He was shown the article by Dr. Ward, above referred to, and asked if he agreed with it. He replied, "I do agree, particularly since reading just last week the report of four men who have had a great deal of cancer research experience, Harvard men. They think now they have found one of the causes of cancer, which is due to the presence in the blood of free hydro-carbon, and they have examined a lot of them. The belief that trauma may cause cancer, of course, I don't know, but such has never been proven. When people tell me they have had a blow at a particular spot, and that is the cause of cancer, etc., I don't pay much attention to that." He was asked:

"Q. And under their statement, is there any basis for the theory that a blow causes it? A. They claim they have discredited that belief."

Dr. W. H. Cheney, witness for defendant, testified that he treated Mrs. Webb on several occasions in 1936, 1937 and 1938, for a tumor of the abdomen, but did not take it out. He stated that no one knows the cause or cure of cancer, "The cause is not known, it is speculative;" that cancer is one of the major causes of death. Asked on cross-examination, if one of the theories in the medical profession as to the cause of cancer is trauma, he replied that some claim that is a theory, "I don't know. It wouldn't be my theory." "I think some people do claim that." "Q. Is it not true that a bruise on a woman's breast is prone to cause it, more so than some other part of the body? A. I have heard doctors say that."

Dr. Paul Johnson, witness for defendant, testified that the cause of cancer is not known; that if a woman re-

144

ceived a blow on her breast sufficient to tear the tissues, she would know about it, if the injury was severe. The article by Dr. Ward on the ''Cause of Cancer'' was read to the witness and he agreed with the article. On cross-examination he admitted that some reputable physicians do not agree with Dr. Ward's statement as a whole. ''Q. It is true that many doctors advance the theory that a blow, particularly on the breast of a woman, can cause cancer? A. That idea has been advanced on the theory that any irritation might have something to do with cancer, but it has never been proven that is true.'' He says that many theories have been advanced as to the cause of various diseases; that the cause of cancer is purely speculative and is not known, according to medical science today.

The trial judge found that the proof does not establish as a fact that Mrs. Webb died as the result of a cancer caused by her injury. Three medical witnesses introduced by defendant testified that the cause of cancer is purely speculative; that the idea that a blow on the breast could cause cancer had been advanced but never proven to be true. All three of these witnesses agreed with the article by Dr. Ward. Petitioner's witness, Dr. Laws, said that medical science does not know that cancer will result from certain conditions, or that it results from traumatic conditions, ''Nobody knows that,'' he adds. The cause of cancer is, he says, ''purely conjecture.'' For this court, in view of the medical proof, to hold that the cancer on Mrs. Webb's breast was caused by the blow she received would rest in pure speculation, conjecture and guess.

█ █ It was incumbent upon the petitioner to establish by competent and material proof that death was occasioned by an accident arising out of and in the course

of her employment. Such a finding cannot be based upon mere conjecture or speculation. In *Home Ice Co.* v. *Franzini,* 161 Tenn., 395, 401, 32 S. W. (2d) 1032, 1033, it was said, *inter alia,* ''Indeed, if, upon undisputed proof, it is conjectural whether death resulted from a cause operating within his employment or a cause operating without his employment, there could be no award to the employee's dependents. *Battle Creek Coal & Coke Co.* v. *Martin, supra* [155 Tenn., 34, 290 S. W. 18].''

The result is that the judgment of the trial court must be affirmed.