VERA A. DUNCAN, APPELLANT, V. GEORGE A. WEIDMAN ET AL., APPELLEES.

11 N. W. (2d) 537

FILED OCTOBER 29, 1943.  No. 31688.

*Frederick J. Patz,* for appellant.

*Cline, Williams & Wright, contra.*

Heard before SIMMONS, C. J., PAINE, CARTER, CHAPPELL and WENKE, JJ., and NUSS, District Judge.

PAINE, J.

This is an appeal in a workmen's compensation case from a trial *de novo* in the district court, in which an award of compensation had been set aside and the petition dismissed.

The deceased, Orville Duncan, was employed as a battery man by the defendant, and plaintiff claims that he came to

his death while on duty and in the course of his employment at the defendant's place of business. His widow, as plaintiff and appellant, brings her appeal to this court. Defendant denies that the deceased had had any accident or injury while on the job.

Plaintiff testified that they lived at 2028 Q street; that they had no children; that her husband was receiving $18 a week at the time of his death; that the deceased had been working as battery man for Super-Service, but went to work for the defendant company January 1, 1940; that he worked until the 6th, and that on Sunday, January 7, Dr. Reed was called to see the deceased, and told him that he had a bad heart condition; that he remained at home a week or two and then went back to work. She testified that during the time he was home the manager came out to see him, and she told him what the doctor had said about his weak heart, and the manager said that he would put him on easier work, but that they needed him back at work very badly.

Elmer Woodley testified that he was a fellow employee of deceased in the defendant company; that he and the deceased had both been working for the P. R. Robinson Super-Service Station, and that on January 1, 1940, they both began working for the defendant company when it bought. out the Super-Service and moved the stock and equipment to a new location about a block away; that while the deceased was employed as a battery man he worked, as did the rest of them, in moving the stock over to the new place. He testified that it snowed that first week in January, and that the employees always kept the snow scooped off the sidewalk. He knew that the deceased worked from January 1 to January 6 and then did not return to work until the middle of one week, and that he died on Monday of the following week. He said the deceased was supposed to come to work at 7 o'clock, go to the post office, get the mail, clean up the place, sweep out the service room and service floor, and usually on Monday morning orders would come in by mail that had to be filled. The witness said he came

to work at 8 o'clock, and that this Monday morning they finished loading and checking out the truck for Mr. Burns, the salesman, so he could leave town. They put a load of tires on his truck, and three to five batteries. He said the batteries weigh about 35 pounds each; that the deceased put some of the batteries on the truck.

Witness Woodley had worked at the Super-Service Station with the deceased for about four years, and said it was quite generally known that the deceased had a heart ailment, and it was the practice of the other employees to help the deceased as much as he would let them in doing the heavier parts of his work, to relieve him of the strain because of his heart ailment. He had also gone on hunting trips with the deceased, where they had walked long distances. He testified that the deceased collapsed between 8:30 and 9 o'clock on the morning of January 22, the witness catching him in his arms before he hit the floor; that the last thing he had done just before that was to drive the store service truck in from the street; that deceased did not say anything to any one at the time he collapsed, or after; that they immediately called the fire department and had the pulmotor squad and the doctor.

On cross-examination witness Woodley testified that the deceased went out in the street, got in the pick-up truck and drove it into the place of business, got out of the truck, walked about 30 feet, looked like he was reaching for something, and started to say something; that he broke out into a sweat, and he saw him going down and grabbed him.

Dr. E. Burkett Reed testified that he was first called to attend the deceased in August, 1937, for a pain in the chest, and treated him until September 27, 1937, and he was then able to carry on; that he next saw him at his home on January 7, 1940, suffering from a deep chest pain, the deep-pressure type of pain, and complained of having done some extra work at his place of business. Because of his past history of angina and two recoveries, he started giving him the same medicine as before, and told him to remain real quiet for the next several days. He testified on cross-exam-

ination that the cause of death was coronary thrombosis. He said that such an attack may occur when a man is sitting in a chair, or when he gets up and starts to stir around, but it may come at any time, no matter what a man is doing. He believed that extra exertion might hasten the process.

The death certificate, attached as defendant's exhibit No. 1, signed by Dr. E. Burkett Reed, shows that the deceased was over 51 years of age, that he died of coronary occlusion, that there were no contributing causes, and after the words "manner of injury" he had filled in the word "none." Q. 24. "Was disease or injury in any way related to occupation of deceased?" A. "No."

Art Dammann testified by deposition taken at Buckhorn Mineral Wells, Arizona. He sold out his business to the defendant company, which also bought the Super-Service Station at the same time. He testified that he had also managed the Super-Service Station, and that he never knew of the deceased sustaining any strain or injury while he worked there. He testified that deceased was not a robust man, nor in particularly poor health; that he had charge of the battery room. He never knew that deceased was suffering from any heart trouble prior to the time of his death. He said that immediately prior to his death that morning the deceased just helped get the trucks ready, and did not do anything out of the ordinary, and did not do any strenuous work to his knowledge. The first time he saw him on that morning was when he went out and drove in the service truck, and he was kind of staggering, and they brought him into the office and he keeled over, and broke out in a sweat. He said he called the fire department and Dr. Allan Campbell, who was his own personal physician, and the fire department arrived first, and worked on the man for a while with a pulmotor; that then Dr. Campbell examined him, and told the boys from the fire department that they might just as well quit working on him, for he was dead.

Witness Dammann said deceased was off work for a couple of weeks sick just before this, and he went out to his

home to see if there was anything he could do for him. He was in bed at the time, but said he never urged him to come back to work, and never said he would put him on lighter work, and that deceased just came back naturally. "I don't recall every bit of conversation I had down at his house. I might have said, 'When Orville comes back we will try to shield him,' which would be entirely human. You know what I mean? Anybody that is sick can come and take the work milder to be darn sure he was plenty okay."

There was evidence that plaintiff might have overstrained in shoveling snow off the sidewalk the last week he worked, from January 1st to the 6th. The evidence of Thomas A. Blair, senior meteorologist, U. S. Weather Bureau, was that there was only 5/10 of an inch of snowfall in Lincoln on January 3, and that there was also snow on January 6, which began falling at 12:45 p. m., but it only amounted to one inch of snow by 6:30 p. m. that night.

Dr. Arthur L. Smith was called as a medical expert. He had never seen nor examined the deceased. In the statement of facts given him, it was stated that deceased assisted in throwing from 12 to 14 tires on the truck, and lifted three to five batteries off the floor onto the truck. Dr. Smith's opinion was that "Contributing factor was doing work which he should not do and knew he should not, and his employer knew he shouldn't do, and I know a person with angina pectoris should not engage in activities which are beyond his work tolerance for a damaged heart of that type."

The plaintiff relies upon several errors for reversal: (1) That plaintiff was entitled to a full death benefit award under the Nebraska workmen's compensation law for accidental death; (2) that the court erred in refusing and failing to find that the plaintiff had conclusively established the fact of accidental death; (3) the court erred in refusing and failing to find that deceased received a strain and overexertion of his heart on January 6 by reason of shoveling heavy snow, which work was extra heavy work, beyond the duties of the deceased as battery man, and that this ag-

gravated a previous heart disease, resulting in a collapse of his heart and his death, which constituted accidental death under the law; (4) that the court refused to find that the manager made a new working agreement before he returned to work, under which he was to do lighter work.

This court has had many workmen's compensation cases in which it developed that the active cause was disease, and not accident or injury, and we will refer very briefly to a few of them.

In *Feeney v. City of Omaha,* 140 Neb. 497, 300 N. W. 571, an award to a fireman was set aside by the district court on the ground that plaintiff was suffering from a disease of the heart, myocarditis, which was of long standing, and became progressively worse.

In *Shamp v. Landy Clark Co.,* 134 Neb. 73, 277 N. W. 802, the deceased was found crumpled up and dying in a coal truck, from which he had unloaded part of the load. There was no evidence that he did not come to his death during the ordinary exertion required of him to perform his ordinary duties. The district court was affirmed in denying recovery.

In *Uribe v. Woods Bros. Construction Co.,* 124 Neb. 243, 246 N. W. 233, employee brought action for accidental injury arising out of heat stroke. *Held,* that no accident occurred, but his disability arose from chronic myocarditis due to infection, a rheumatic type of heart disease. It was held that Cecil Matthews, deputy compensation commissioner, was right in dismissing the claim, and the award of $3,-300 made in the district court should be reversed and the cause dismissed.

In *Kaffenberger v. Iverson,* 142 Neb. 257, 5 N. W. (2d) 687, deceased washed mud out of a basement with a fire hose, and a month later died of pneumonia. No other employee engaged in this work suffered any serious results from the same work, and this court held: "The burden of proof is upon the claimant in a compensation case to establish by a preponderance of the evidence that personal injury was sustained by the employee by an accident arising out of and in the course of his employment."

In *Rose v. City of Fairmont,* 140 Neb. 550, 300 Neb. 574, the light commissioner of the city of Fairmont repeatedly and continuously cranked a Model T Ford on a very cold day, and suffered a heart attack. In reversing an award of the district court, this court said that the burden placed on plaintiff under the workmen's compensation law is not met by surmise or conjecture, nor can it be based upon mere guess, speculation, or possibility, but must be established by sufficient legal evidence leading to the direct conclusion, or a legal inference, that an accidental injury occurred which caused the disability.

In *Mullen v. City of Hastings,* 125 Neb. 172, 249 N. W. 560, a widow brought action for death of her husband, a fireman of the city of Hastings, who was working a suction pump during a fire at Ingleside in the nighttime. Deceased was found lying on the ground dead. This court said that a careful reading of the evidence, principally relating to the *post mortem* examination, failed to show that he did not die from natural causes, or that he died from any accident arising out of his employment. The judgment entered by the district court was reversed because an award must be based on sufficient evidence to show he suffered a disability because of an injury arising out of and in the course of his employment.

As stated in the above and many other cases, the law requires proof of an unexpected and unforeseen accident, arising in the course of employment, which results in a compensable disability.

The evidence in this case fails to measure up to the requirements of our workmen's compensation law for a recovery viewed from its most liberal angle. The plaintiff's deceased had suffered from a serious and unfortunate heart disease since 1937, and the evidence fails to establish any accident or injury from his employment which led to his death. The district court was right in vacating the award of the compensation court and dismissing appellant's petition.

AFFIRMED.