KANOFF, APPELLEE, *v.* INDUSTRIAL COMMISSION OF OHIO, APPELLANT.

(No. 795—Decided November 29, 1954.)

*Messrs. Winchester & Winchester,* for appellee.

*Mr. C. William O'Neill,* attorney general, and *Mr. George H. Fell,* for appellant.

DEEDS, J. This is an appeal on questions of law from a judgment of the Court of Common Pleas of Wood County. The judgment was entered by that court upon an award by a jury in favor of the plaintiff, appellee herein, as the dependent widow of John Kanoff, deceased, hereinafter referred to as plaintiff, against the defendant, appellant herein, the Industrial Commission of Ohio, hereinafter referred to as the defendant.

The trial to a jury in the Court of Common Pleas was had pursuant to Section 1465-90, General Code (Section 4123.51, Revised Code), upon the transcript of the record on rehearing had before the defendant, the petition of the plaintiff, and the answer of the defendant. Motions by the defendant for a directed verdict at the close of plaintiff's case and at the conclusion of all the evidence, and motions by the defendant for judgment notwithstanding the verdict of the jury and for a new trial were, respectively, overruled by the trial court.

It is not disputed that on July 21, 1951, the decedent, John Kanoff, sustained compensable injuries while in the course of his employment with The Libbey-Owens-Ford Glass Company,

an employer amenable to and complying with the Workmen's Compensation Act. It is the claim of the plaintiff that such injuries were a proximate cause of the death of the decedent. Therefore, the question determinative of the case on this appeal is whether on the record before us there is competent evidence of probative value tending to prove that the injury was a proximate cause of the death of the decedent, John Kanoff.

The injury which it is claimed resulted proximately in the death of the decedent, as described in the application of the plaintiff for payment of money out of the State Insurance Fund for compensation on account of the death, consisted of "contusion of back and right forearm and injured abdomen."

The testimony of Dr. Monroe Cronstine, the attending physician, concerning the injuries which he observed in his first examination of the decedent following the accident, on July 23, 1951, was as follows:

"A. The history was that he fell while working and hit himself on his left hip two days previously, which was July 21st, and as a result of same he had a contusion to the muscles of his left hip with severely strained abdominal muscles."

The condition directly leading to decedent's death, according to the official death certificate as certified by Dr. B. E. Petcoff, was "bowel obstruction following appendectomy." According to the medical records of the Riverside Hospital at Toledo, where the decedent was a patient at the time of his death and where an emergency operation for acute appendicitis was performed upon the decedent by Dr. Norman B. Muhme on November 16, 1951, following which the decedent died on November 20, 1951, it appears that the death was the result of "general peritonitis," with "acute appendicitis" being recorded as a "contributory" cause. It appears also from the medical testimony in the record that the bowel obstruction resulted directly from the condition of peritonitis. It is clear, therefore, from the foregoing that the issue of causal connection between the injury as described and the death of the decedent as a result of the causes enumerated made necessary and involved a scientific inquiry and required competent testimony by qualified medical witnesses in order to establish a causal relationship between the injury and death.

In *Stacey* v. *Carnegie-Illinois Steel Corp.,* 156 Ohio St., 205, 101 N. E. (2d), 897, the syllabus is as follows:

"1. A condition of bilateral cataracts claimed to have resulted from a small particle which blew into one of the eyes falls within the classification of industrial injury cases where the testimony of lay witnesses is without probative value to establish the probability of a proximate causal relationship between the accident and the claimed resulting physical condition, and in order to prove such relationship medical testimony is essential.

"2. Where a claimant for compensation under the Workmen's Compensation Act is suffering from bilateral cataracts and claims that the condition in his right eye proximately and directly resulted from a small particle no larger than a pin head which blew into that eye, and where the most favorable medical evidence was testimony that a causal relationship between the particle which blew into the eye and the eye condition was remotely possible, there is no evidence sufficient to justify submission to the jury of the question of causal connection between the claimed accident and the eye condition. (*Drakulich* v. *Industrial Commission,* 137 Ohio St., 82, approved and followed. *Bowling* v. *Industrial Commission,* 145 Ohio St., 23, distinguished.)"

In the opinion of the court in the *Stacey case, supra,* at pages 210, 211, is a statement pertinent to the subject now under consideration:

"Under the decisions of this court, where an issue in a case involves a question of scientific inquiry which is not within the knowledge of lay witnesses or members of the jury, expert testimony is required to furnish the answers, and, if the issue relates to a causal connection between an injury and a subsequent physical condition which involves only a scientific inquiry, such causal connection must be established by the testimony of medical witnesses competent to testify on the subject, and the proof in such case must establish a probability and not a mere possibility of such causal connection. *Drakulich* v. *Industrial Commission,* 137 Ohio St., 82, 27 N. E. (2d), 932; *Aiken* v. *Industrial Commission,* 143 Ohio St., 113, 53 N. E. (2d), 1018.

"The syllabus in the *Aiken case* reads:

" 'To entitle the dependents of a deceased workman to participate in the state insurance fund upon a claim that the death of such workman from acute myocarditis was attributable to a compensable knee injury suffered six years before, the proof offered must show such injury was a proximate cause of death and must include evidence by competent medical witnesses that a probable relationship existed between the original accident and the myocarditis.'

"See, also, *Brandt* v. *Mansfield Rapid Transit, Inc.*, 153 Ohio St., 429, 92 N. E. (2d), 1."

From the transcript on rehearing before the defendant it appears that three physicians testified on behalf of the plaintiff, the first medical witness being Dr. Cronstine, the attending physician of the decedent, whose testimony has been quoted to the effect that he first saw and examined the decedent on July 23, 1951, two days following the accident, and who testified further that he thereafter saw and treated the decedent on July 26, August 2, 9, 16, 24 and 27, also on September 5, 12, 19 and 26, and on October 8, the last occasion upon which this physician saw or treated the decedent being October 24, 1951.

In view of the conclusion which this court has reached on the record in the case now before us for review, it becomes necessary to consider in this opinion the medical testimony which is most favorable to the plaintiff. Also by reason of our conclusion on this appeal it becomes unnecessary and would serve no purpose pertinent to this appeal for the court to comment or pass upon the competency of the several hypothetical questions propounded to the medical witnesses on behalf of the plaintiff.

We do consider the circumstance significant in considering the testimony of the attending physician Dr. Cronstine, that Dr. Cronstine did not see or examine the decedent between the date of October 24 and the decedent's death, which occurred on November 20, 1951. It appears from the transcript that in answer to a question which, in substance, concerned whether there was any connection between the cause of the decedent's death and the injury he received on July 21, 1951, for which this attending physician treated him, the witness answered:

"I can't answer yes or no. It's probable or possible, let's put it that way."

Thereafter the doctor was interrogated further and answered as follows:

"My opinion is that even from the written records here and not from memory, as I have mentioned, I repeat that even from the records that I have from my office on the 23rd of July, 1951, he presented himself at my office and showed evidence of an injury to his left hip and also strained abdominal muscles. Now, it is possible that as a result of some injury to the abdominal muscles that it may have lowered the resistence of the tissues of the abdomen, thereby helping for an appendicitis to come about in that individual. Although I might say that people have appendicitis that never were in an injury and people may have an injury and never have appendicitis. So with that possibility that appendicitis may have been brought about in this individual, but there is nothing factual that can be stated in that direction."

A complete resume of Dr. Cronstine's observation and treatment of the decedent was elicited upon cross-examination of the doctor as follows:

"By Mr. Green: Now, Dr. Cronstine, would the following be an accurate statement of your medical history and treatment of Mr. Kanoff as made by you:

" 'I first saw the decedent July 23, 1951, and he gave a history of having fallen on his left hip and strained abdominal muscles on July 21, 1951. When I saw him he was complaining of some slight pain over the region of the appendix, was placed on diet and medication; was next seen July 26 and August 2 and he had no abdominal tenderness at all and felt much better. On August 9th he complained of reoccurence of pain in his back and he felt as if he had strain of the abdominal muscles. August 16 he felt much better, except for the fact that he felt greatly fatigued and tired easily. He had lost 13 pounds during the last year. August 24, 1951, had x-ray of the chest and sacroiliac region and lower lumbar vertebrae. X-ray was entirely negative except for pneumoconiosis. Weight loss 13 pounds during preceding year. Blood pressure 118 over 90. Only complaint was extreme fatigue. September 12, 1951, had gained three pounds, weight 148. No complaint of pain and only distress was extreme weakness. September 26, he was seen and exam-

ined and said he felt much better and weighed 152 pounds and was to return to work October 8, 1951, but did not return until October 15, 1951.'

"Would you say that was an accurate statement of your care and treatment of him? A. Absolutely, that's my statement without your mentioning him. I have the same facts here on my card that you have read into the minutes here.

"Q. And what I have read to you would be an accurate description of your treatment of him and your findings and so forth? A. That is correct.

"Q. And then you did not see him after—or did you see him after October 15, 1951? A. I saw him on the 8th of October, 1951. He weighed 154 pounds and he stated that he felt better and that he was to return to work on October 15th.

"The referee: The question is did you see him after that date, Doctor.

"The witness: Well, I thought he gave a date earlier than October 15.

"The referee: No, October 15th.

"The witness: Well, let me make sure. When was he sent to the hospital?

"Q. In November. A. I have a record here that on October 24, 1951, I saw him.

"Q. You saw him? A. Yes, and he weighed 150 pounds then and his statement was that he felt some better.

"Q. That's the last time you saw him? A. And I was under the impression he was to return to work the following day and that's the last I saw him. That's the 24th of October, 1951."

The surgeon, Dr. Muhme, who performed the operation upon the decedent, testified that he first saw the decedent at Riverside Hospital on November 16, 1951, and diagnosed his condition as acute appendictis and advised immediate surgery.

He testified further that he performed the operation on November 16, 1951, and found a "perforated gangrenous appendix," which was removed; and that he saw the decedent every day following until his death on November 20, 1951.

This physician was also present at the autopsy performed 19 hours later on November 21, 1951, and he gave "bowl ob-

struction and peritonitis" as his opinion as the cause of death.

In answer to further questions, Dr. Muhme gave the following answers:

"The findings at operation could not be associated with any injury. However, similar cases have followed injury. In my opinion the injury such as described could cause appendicitis.

"Q. Appendicitis such as you found in John Kanoff?

"Mr. Green: Objection.

"The Referee: Overruled.

"Mr. Green: Exception.

"A. Yes.

"* * *

"A. The injury could have lowered the resistance so that at the time of operation that his general condition was such that he could not overcome the appendicitis."

Another medical witness testifying on behalf of the plaintiff was Dr. Boni Petcoff, who testified that he saw the decedent on the first occasion at decedent's residence on November 16, 1951, that he was seriously ill, and on the advice of this physician the decedent was removed to the hospital. He testified that an examination at the hospital resulted in the conclusion that the decedent was suffering from acute appendicitis, following which the operation already referred to in this opinion was performed by Dr. Muhme, with the assistance of the witness Dr. Petcoff.

The writer of this opinion will adopt the testimony of Dr. Petcoff as it appears and is set out in the brief of counsel for the plaintiff, as being the testimony of the witness which is most favorable to the plaintiff, which testimony is as follows:

"Based on this question Dr. Petcoff stated that he felt that this injury, 'can have a direct effect on the man's later condition as it developed about November 16th.'

"Dr. Petcoff was then asked, 'With reference to Mr. Kanoff, state whether or not in your opinion it did have a direct effect upon his condition at the time of operation?'

"To this Dr. Petcoff answered, 'Yes, I do think it did.'

"The Doctor was next asked: 'State whether or not, Doctor, you have an opinion as to whether or not the condition aris-

ing from the accident had an effect upon his recovery from the operation for appendicitis.'

"To this the Doctor replied that he had such an opinion. He was then asked: 'What, Doctor, is your opinion with reference to that?'

"To this he replied: 'It is my opinion that it had some bearing on his recovery, yes. It had a deleterious bearing upon it, yes.'

"The Doctor was then asked to state, whether or not he had an opinion as to whether there was a causal connection between the injury that he received and the death of Mr. Kanoff. He answered that he did have such an opinion. When asked his opinion, he stated: 'I believe that it had a bearing on his (Mr. Kanoff's) ultimate recovery.'

"He was then asked whether or not the bearing was for good or bad, and the Doctor stated: 'For bad.'

"The Doctor was then asked: 'Doctor, you say, "I believe it had a bearing." Will you extend that a little, if you can, sir, as to whether it was beneficial to him or detrimental to him.'

"To this, Doctor Petcoff answered: 'I believe that the injury had a detrimental effect on the man's chance of recovery.' "

Following a careful analysis, it is the considered conclusion of this court that there is no medical evidence of probative value contained in the record of the case now under review, tending to establish that the injury sustained by the decedent on July 21 was a proximate cause of the death of the decedent.

In our view, the principles of law applicable and controlling the decision of this court on this appeal have been announced by the Supreme Court of the state in the case of *Aiken* v. *Industrial Commission,* 143 Ohio St., 113, 53 N. E. (2d), 1018. The syllabus in the *Aiken case, supra,* having already been quoted previously in this opinion as a part of the opinion of the Supreme Court in the case of *Stacey* v. *Carneigie-Illinois Steel Corp., supra,* it is unnecessary to again quote same here.

However, in the view of the writer of this opinion, a substantial part of the opinion of the Supreme Court written by Zimmerman, J., in the *Aiken case, supra,* and the prior decisions of that court cited in that opinion, are applicable to the

evidence in the case now before this court, and he therefore deems it appropriate to quote at some length from the opinion, at pages 116, 117, 119, as follows:

"In the case of *Gwaltney, a Minor,* v. *General Motors Corp.,* 137 Ohio St., 354, 30 N. E. (2d), 342, this court held, as stated in the syllabus:.

" 'To entitle a claimant to recover under the Workmen's Compensation Act as a dependent of a killed employee, it must appear from the evidence that such employee sustained a physical or traumatic injury in the course of and arising out of his employment, and that such injury was the proximate cause of his death.'

"As to the necessity for showing a direct causal relation between an injury and death, see, also, *Weaver* v. *Industrial Commission,* 125 Ohio St., 465, 466, 181 N. E., 894; *Peer* v. *Industrial Commission,* 134 Ohio St., 61, 64, 15 N. E. (2d), 772, 774. And compare *Industrial Commission* v. *Brubaker,* 129 Ohio St., 617, 196 N. E., 409.

"In the case of *Drakulich* v. *Industrial Commission,* 137 Ohio St., 82, 27 N. E. (2d), 932, it was announced that the issue of causal connection between an accidental injury and subsequent death from disease, involves a scientific inquiry and must be determined by the testimony of competent medical witnesses. Furthermore, such testimony must show a probability and not a mere possibility that there was a causal connection between the injury and the death to allow a claimant to participate in the state insurance fund. This pronouncement was approved and followed in the later case of *Pfister* v. *Industrial Commission,* 139 Ohio St., 399, 400, 40 N. E. (2d), 671.

"The definition and determination of 'proximate cause' in the field of torts is applicable here. While the determination of the proximate cause of an ultimate result sometimes presents a difficult problem in a particular case, general principles controlling the settlement of such question are well established. Briefly stated, the proximate cause of an event is that which in a natural and continuous sequence, unbroken by any new, independent cause, produces that event and without which that event would not have occurred.

" * * *

"No matter how much we would like to decide in appellee's favor because of her situation, she can not prevail when her right to participate in the state insurance fund rests on such a conjectural and speculative basis.

"The rule is well settled by numerous cases that to establish the relation of cause and effect between an injury to a workman and his death so as to justify an award of death benefits under a workmen's compensation law, the evidence must be such as to remove the case from the realm of speculation and conjecture; there must be competent evidence tending to show a *proximate* causal connection between the injury and the subsequent death. See *Duncan* v. *Weidman* (Neb.), 11 N. W. (2d), 537; *Pixa* v. *Grainger Bros.* (Neb.), 12 N. W. (2d), 74; *Gilmore* v. *Hoke County Board of Education,* 222 N. C., 358, 23 S. E. (2d), 292; *Monahan* v. *Seeds & Durham,* 336 Pa., 67, 6 A. (2d), 889; *McBrayer* v. *Dixie Mercerizing Co.,* 178 Tenn., 135, 156 S. W. (2d), 408; *Cole* v. *Dept. of Labor & Industries,* 200 Wash., 296, 93 P. (2d), 413."

The Supreme Court of the state has also defined and announced clearly the character of the medical testimony required and considered competent in proof of the causal relationship necessary to be established between the claimed injury and the subsequent death in order that the dependent of a deceased employee be entitled to have the benefits provided by the workmen's compensation law of this state.

In the case of *Brandt* v. *Mansfield Rapid Transit, Inc.,* 153 Ohio St., 429, 92 N. E. (2d), 1, the first, second, third and fourth paragraphs of the syllabus are as follows:

"1. As triers of issues of fact a jury is required to determine probabilities.

"2. Such determination of probabilities can not be based on testimony as to mere possibilities.

"3. The testimony of a physician that there 'could' be a causal connection between an injury and a subsequent premature menopause is inadmissible as proof thereof.

"4. To be admissible as proof thereof such testimony must relate to probability."

From the opinion of the court in the *Brandt case, supra,*

the writer considers as being especially applicable to the case now before this court, the following, at pages 431 and 432:

"The jury was required to base its verdict on *probability,* and obviously such a verdict could not be based on mere *possibility.* This court has so held in numerous cases. In the *per curiam* opinion in the case of *Pfister* v. *Industrial Commission,* 139 Ohio St., 399, 40 N. E. (2d), 671, it was said:

" 'Medical testimony was introduced to establish trauma and causal connection. However, such testimony was merely to the effect that claimant's condition could have been or possibly was the result of trauma. As hereto held by this court, the proof must establish a *probability* and not a mere *possibility.* *Drakulich* v. *Industrial Commission,* 137 Ohio St., 82, 27 N. E. (2d), 932.' "

In the third paragraph of the syllabus in the *Drakulich case, supra,* the court held:

" 'Testimony that a person's death from cancer of the liver *could* have resulted from a previous injury to his back is insufficient to prove causal connection between such injury and death. The proof in such case must establish a probability, not a mere possibility of such causal connection.'

"In the syllabus in the case of *Drew* v. *Industrial Commission,* 136 Ohio St., 499, 26 N. E. (2d), 793, this court said in part that 'evidence which shows only that the paralysis *could* have been the direct result of injury sustained in the fall is insufficient proof to warrant submission of the cause to the jury.' And in his opinion in that case Williams, J., stated, 'Proof of possibility is not sufficient to establish a fact; probability is necessary.' "

Giving to the medical evidence in the record before us the most favorable consideration possible, we find that it reaches no greater strength as proof of the causal relationship essential for plaintiff's case than "that the injury could have been a cause" or that "it had a bearing," or still further, that in the opinion of the doctor it was "detrimental," "bad," "deleterious."

We are compelled to the conclusion that such testimony is conjectural and is entitled as proof to no greater value or

weight than mere possibilities, which it is clear is wholly insufficient to meet the requirements of the law as established by the decisions of the Supreme Court of the state. It is clear that the medical evidence in the record now before us does not meet the required test of tending to establish the essential element of causal relationship between the injury and the death of the decedent by proof of probabilities, and that therefore the defendant was entitled to a directed verdict and judgment in its favor in the trial court.

Although the court has considered each of the defendant's assignments of error, in view of the conclusion which the court has reached as already indicated, comment concerning same becomes unnecessary.

The judgment of the Court of Common Pleas is, therefore, reversed and final judgment entered by this court for the defendant.

*Judgment reversed and final judgment for defendant.*

FESS and CONN, JJ., concur.